**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,[1]<br><br>Reorganized Debtors, | Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>(Jointly Administered) |
| MOHSIN Y. MEGHJI, LITIGATION ADMINISTRATOR, AS REPRESENTATIVE FOR THE POST-EFFECTIVE DATE DEBTORS,<br><br>Plaintiff,<br><br>v.<br><br>COMPOUND LABS, INC., COMPOUND DAO, ROBERT LESHNER, and GEOFFREY HAYES,<br><br>Defendants. | Adversary Proceeding<br><br>Adv. P. No. 24-03989 (MG)<br><br>Civil No. 25 Civ. _____ |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS COMPOUND LABS, INC.'S, ROBERT LESHNER'S, AND GEOFFREY HAYES'S MOTION TO WITHDRAW THE REFERENCE PURSUANT TO 28 U.S.C. § 157(D)

Jason P. Gottlieb
Heath D. Rosenblat
Michael Mix
Rachel Fleder
MORRISON COHEN LLP
909 Third Avenue, 27th Floor
New York, New York 10022
Telephone: (212) 735-8600

*Counsel for Defendants Compound Labs, Inc., Robert Leshner, and Geoffrey Hayes*

---

[1] The Post-Effective Debtors in these chapter 11 cases ("**Chapter 11 Cases**"), along with the last four digits of each Post Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1
PROCEDURAL BACKGROUND ....................................................................................... 3
APPLICABLE STANDARD ................................................................................................ 4
ARGUMENT ........................................................................................................................ 6
   I.    Withdrawal of the Reference Is Mandatory ............................................................ 6
   II.   Cause Exists Here for Permissive Withdrawal ...................................................... 9
      A.    The Bankruptcy Court Does Not Have Final Adjudicative Authority ......... 9
      B.    The Adversary Proceeding Is a Non-Core Matter ...................................... 10
      C.    The Remaining Orion Factors Favor Withdrawal ...................................... 11
CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Arbco Cap. Mgmt., LLP*,
   479 B.R. 254 (S.D.N.Y. 2012) ................................................................................................11

*Bear, Stearns Sec. Corp. v. Gredd*,
   2001 WL 840187 (S.D.N.Y. July 25, 2001) ...............................................................................6

*Crypto Colo Ctr. Corp. v. Dei Vitae Enterprises, LLC*,
   2024 WL 1605380 (W.D.N.C. Mar. 4, 2024) ..........................................................................11

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992) .......................................................................................................6

*Dynegy Danskammer, LLC v. Peabody COALTRADE Int'l Ltd.*,
   905 F. Supp. 2d 526 (S.D.N.Y. 2012) ................................................................................12, 13

*In re Empire Stat Grp., LLC*,
   2024 WL 3666381 (S.D.N.Y. Aug. 5, 2024) ..................................................................... passim

*Enron Power Mktg. v. Cal. Power Exch. (In re Enron Corp.)*,
   2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004) ...........................................................................5

*In re FMI Forwarding Co., Inc.*,
   2004 WL 1348956 (S.D.N.Y. June 16, 2004) .........................................................................11

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014) ...................................................................................................................7

*In re Iannacchino*,
   2018 WL 1009279 (S.D.N.Y. Feb. 20, 2018) ....................................................................11, 13

*In re Jacoby & Meyers-Bankr. LLP*,
   2017 WL 4838388 (S.D.N.Y. Oct. 25, 2017) ..........................................................................10

*LightSquared Inc. v. Deere & Co.*,
   2014 WL 345270 (S.D.N.Y. Jan. 31, 2014) ...................................................................7, 9, 12

*Long v. Shultz Cattle Co.*,
   881 F.2d 129 (5th Cir. 1989) .....................................................................................................9

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
   54 F. 4th 82 (2d Cir. 2022) ........................................................................................................9

*In re MF Glob., Inc.*,
 2012 WL 4757866 (S.D.N.Y. Oct. 4, 2012) ...............................................................................5

*Mishkin v. Ageloff*,
 220 B.R. 784 (S.D.N.Y. 1998) ..................................................................................................6

*Mt. McKinley Ins. Co. v. Corning Inc.*,
 399 F.3d 436 (2d Cir. 2005) ....................................................................................................10

*Nitel, Inc. v. Cerberus Bus. Fin., LLC*,
 2021 WL 5770933 (S.D.N.Y. Dec. 3, 2021) ...........................................................................13

*In re Orion Pictures Corp.*,
 4 F.3d 1095 (2d Cir. 1993)................................................................................................ *passim*

*Picard v. Sage Realty*,
 2021 WL 1987994 (S.D.N.Y. May 18, 2021) .......................................................................5, 7

*Roman Cath. Diocese of Rockville Ctr., New York v. Arrowood Indem. Co.*,
 2021 WL 1978560 (S.D.N.Y. May 17, 2021) .........................................................6, 10, 11, 12

*Scott v. AIG Prop. Cas. Co.*,
 2017 WL 1380607 (S.D.N.Y. Apr. 17, 2017) .........................................................................11

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
 454 B.R. 307 (S.D.N.Y. 2011) .......................................................................................4, 5, 6, 7

*SEC v. Coinbase, Inc.*,
 726 F. Supp. 3d 260 (S.D.N.Y. 2024) .......................................................................................8

*SEC v. Jarkesy*,
 603 U.S. 109 (2024) ................................................................................................................10

*SEC v. Kik Interactive Inc.*,
 492 F. Supp. 3d 169 (S.D.N.Y. 2020) .......................................................................................9

*SEC v. Ripple Labs, Inc.*,
 682 F. Supp. 3d 308 (S.D.N.Y. 2023) .......................................................................................8

*SEC v. W.J. Howey Co.*,
 328 U.S. 293 (1946) ..............................................................................................................8, 9

*Stern v. Marshall*,
 564 U.S. 462 (2011) .......................................................................................................5, 9, 10

*In re SVB Fin. Grp.*,
 2023 WL 8622521 (S.D.N.Y. Dec. 13, 2023) .......................................................................5, 7

*United Hous. Found., Inc. v. Forman*,
    421 U.S. 837 (1975) ..................................................................................................... 8

**Statutes and Rules**

28 U.S.C. § 157 ............................................................................................................ *passim*

28 U.S.C. § 1334 ..................................................................................................................... 4

Securities Exchange Act of 1934 Section 10 ............................................................... 4, 7, 8, 9

SEC Rule 10b–5 ................................................................................................................. 4, 7

**Other Authorities**

130 Cong.Rec. H1849–50 (daily ed. March 21, 1984) (Rep. Kastenmeier stated
    that it would cover "cases involving the . . . Securities and Exchange Act of
    1934, and similar laws.") ............................................................................................ 7

*In the Matter of Standing Order of Reference Re: Title 11*, No. 12-MC-00032
    (S.D.N.Y. Jan. 31, 2012) ............................................................................................. 4

Defendants Compound Labs, Inc. ("**Labs**"), Robert Leshner ("**Leshner**"), and Geoffrey Hayes ("**Hayes**," together with Leshner, "**Individual Defendants**," and collectively, "**Moving Defendants**"), pursuant to 28 U.S.C. § 157(d), respectfully submit this memorandum of law (this "**MOL**") in support of their motion to withdraw the reference ("**Motion**") of the above-captioned non-core adversary proceeding ("**Adversary Proceeding**") brought by Plaintiff Mohsin Y. Meghji (Litigation Administrator for Celsius Network LLC and its affiliated Debtors ("**Celsius**")).

## **PRELIMINARY STATEMENT**[2]

Pinned to a single and wholly inapplicable statement made in a 2019 Whitepaper, Celsius's claims wrongly attempt to hold Moving Defendants liable for trading losses Celsius allegedly suffered in November 2020. At issue is a publicly-available software protocol system ("**Protocol**") that allows users to borrow cryptocurrency assets by using their other cryptocurrency assets as collateral. Labs (founded by Individual Defendants[3]) originally developed the Protocol, designed to operate autonomously through a collection of computer code.

In the Adversary Proceeding, Celsius avers that a Protocol design feature, a feature that was publicly known and introduced after Labs gave up all control over the Protocol, operated inconsistently with the 2019 Whitepaper's inapplicable statement. Unfortunately for Celsius, in June 2020—months before the events at issue in this Adversary Proceeding—Labs publicly and openly turned over all control of the Protocol to its community of users.

More specifically, Celsius alleges it maintained borrowing positions on the Protocol that were liquidated in November 2020 due to Celsius's position falling below a required collateral

---

[2] Capitalized terms used but not defined in this Preliminary Statement shall have the meanings ascribed to them elsewhere in this MOL or the Motion to Dismiss, as applicable.

[3] The Individual Defendants no longer work at Labs.

ratio that occurred because of (a) an increase in the value of assets Celsius had borrowed and (b) Celsius's failure to increase its posted collateral. Moving Defendants' alleged liability resulting from this November 2020 liquidation event rests on the (weak) legal theory that Labs stated in 2019 that the Protocol obtained certain pricing information from multiple outside sources; but when the liquidation event occurred in November 2020 (after the handover of full control over the Protocol to the community), the Protocol obtained pricing information from a single outside source, and that source was allegedly wrong. *See id.* ¶¶ 3-7, 40-41, 57-61.

As result of these alleged losses, Celsius brings various claims against the Moving Defendants that include, *inter alia*, a federal securities fraud claim. In and of itself, this federal securities claim provides grounds for mandatory withdrawal of the reference of the Adversary Proceeding from the Bankruptcy Court. Celsius's securities fraud claim is premised on the theory that two blockchain-based digital assets, COMP and cTokens,[4] are investment contract securities of which Celsius was a "beneficial owner." *See id*. ¶¶ 53, 55, 87-88. Such allegations raise substantial and material issues of non-bankruptcy federal law.

With respect to the remaining counts (negligence, negligent misrepresentation, and professional malpractice) there is also cause under the applicable case law for permissive withdrawal of the reference. **First**, the Bankruptcy Court does not have constitutional authority to enter final judgments in the Adversary Proceeding because (a) all of Celsius's claims involve private rights, (b) Moving Defendants did not file any proof of claim in the underlying bankruptcy proceeding; and (c) Moving Defendants did not consent to the Bankruptcy Court entering final

---

[4] COMP is an Ethereum Request for Comment Number 20 ("**ERC-20**") governance token used by tokenholders (or their delegates) to propose and vote on changes to the Protocol. A cToken is ERC-20 token that represents a claim to receive back the balance that a user supplied to the Protocol; the Protocol automatically mints cTokens that correspond to supplied assets, and when users want to withdraw their supplied assets from the Protocol, they redeem their cTokens for the underlying crypto asset they supplied plus the interest they earned. Celsius alleges that it staked the asset Ether ("**ETH**") on the Protocol, and in return received the cToken "cETH." See *id.* ¶ 55.

judgments. **Second**, the Adversary Proceeding exclusively involves non-core claims that do not implicate bankruptcy law. **Third**, withdrawal of the reference is favored here under the *Orion* factors because: (i) it would be judicially inefficient for the Adversary Proceeding to remain in Bankruptcy Court, which does not have any specialized familiarity or experience with Celsius's claims and would be limited to submitting proposed findings of fact and conclusions of law for *de novo* review by the District Court; (ii) it would not hinder the uniform administration of bankruptcy law or intra-case uniformity; (iii) Moving Defendants demanded a jury trial; and (iv) the Motion is not motivated by forum shopping.

Accordingly, for the reasons set out above and below, as well as in the Motion to Dismiss, there are sufficient grounds for both mandatory and permissive withdrawal. Moving Defendants respectfully request that the District Court grant the Motion so that the Adversary Proceeding may be adjudicated by the District Court.

## PROCEDURAL BACKGROUND

On July 13, 2022, Celsius filed a voluntary chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York ("**Bankruptcy Court**"). *See In re: Celsius Network LLC, et al.*, No. 22-10964, ECF No. 1. On July 12, 2024, Celsius filed the *Complaint* (Adv. P. No. 1) ("**Original Complaint**") commencing the Adversary Proceeding against only Labs and asserting claims of negligence, negligent misrepresentation, and professional malpractice against Labs. On October 11, 2024, Labs moved to dismiss the Original Complaint. *See* Adv. P. Nos. 15-17. Instead of opposing Labs' original motion to dismiss, Celsius filed the *Amended Complaint* (Adv. P. No. 22) ("**Amended Complaint**").[5]

---

5     The Amended Complaint is attached as <u>Exhibit A</u> to the Declaration of Jason P. Gottlieb ("**Gottlieb Decl.**").

In the Amended Complaint, Celsius brought additional claims against Labs and added the Individual Defendants. Specifically, in addition to retaining its original negligence, negligent misrepresentation, and professional malpractice claims against Labs, Celsius now also asserts: (a) claims for federal securities fraud under Section 10(b) of the Exchange Act and Rule 10b–5(b) and for breach of fiduciary duty against all Moving Defendants and (b) claims for negligent misrepresentation and professional malpractice claims against Individual Defendants. Moving Defendants filed, on December 20, 2024, the *Motion to Dismiss the Amended Complaint* (Adv. P. Nos. 32-33) ("**Motion to Dismiss**").[6] Celsius's deadline to file an opposition to the Motion to Dismiss is January 31, 2025, and Moving Defendants' deadline to file a reply in support of its Motion to Dismiss is February 21, 2025. *See* Adv. P. No. 36.

## APPLICABLE STANDARD

Federal district courts have original jurisdiction over all civil proceedings "arising under," "arising in," or "related to" cases under Title 11, the United States Bankruptcy Code. 28 U.S.C. § 1334(b). In the Southern District of New York, all such proceedings are automatically referred to the Bankruptcy Court. *See In the Matter of Standing Order of Reference Re: Title 11*, No. 12-MC-00032 (S.D.N.Y. Jan. 31, 2012). This automatic reference, however, is subject to both permissive and mandatory withdrawal pursuant to 28 U.S.C. § 157(d); *see Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 307, 311 (S.D.N.Y. 2011) ("The first sentence in Section 157(d) provides for 'permissive' withdrawal, or withdrawal for cause, while the second sentence provides for 'mandatory' withdrawal.").

Withdrawal of the reference is mandatory if "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or

---

[6] The Motion to Dismiss is attached as <u>Exhibit B</u> to the Gottlieb Decl.

4

activities affecting interstate commerce." 28 U.S.C. § 157(d). Courts have interpreted this statutory language to mean that withdrawal is mandatory "where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for resolution of the proceeding." *In re MF Glob., Inc.*, 2012 WL 4757866, at *3 (S.D.N.Y. Oct. 4, 2012) (*quoting In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990)). "Consideration is 'substantial and material' when the case requires the bankruptcy judge to make a 'significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes.'" *Bernard L. Madoff*, 454 B.R. at 312 (quoting *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir.1991); *Picard v. Sage Realty*, 2021 WL 1987994, at *6 (S.D.N.Y. May 18, 2021) ("The substantial and material consideration element for mandatory withdrawal is satisfied where resolving the action would require the bankruptcy court to engage itself in the intricacies of non-bankruptcy law.") (citations omitted).

The purpose of mandatory withdrawal is to "assure that an Article III judge decides issues calling for more than routine application of federal laws outside the Bankruptcy Code." *Enron Power Mktg. v. Cal. Power Exch. (In re Enron Corp.)*, 2004 WL 2711101, at *2 (S.D.N.Y. Nov. 23, 2004) (citations omitted). "While novel issues of federal law are not necessary to satisfy this standard, the presence of such issues suggests that withdrawal is mandatory." *In re SVB Fin. Grp.*, 2023 WL 8622521, at *5 (S.D.N.Y. Dec. 13, 2023).

Additionally, courts may grant permissive withdrawal "for cause shown." 28 U.S.C. § 157(d). The Second Circuit established a framework for assessing whether cause for withdrawal exists in *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993), though this framework was modified by the Supreme Court's subsequent decision in *Stern v. Marshall*, 564 U.S. 462, 503 (2011). "In short, pursuant to *Orion* as modified by *Stern*, in order to determine whether cause

5

exists to withdraw the bankruptcy reference, the [District] Court must evaluate: (a) whether the bankruptcy court has final adjudicative authority over the matter; (b) whether the claims at issue are core or non-core; and (c) whether the remaining factors of [i] judicial efficiency, [ii] uniformity, [iii] the parties' jury trial rights, and [iv] the prevention of forum shopping favor withdrawal." *Roman Cath. Diocese of Rockville Ctr., New York v. Arrowood Indem. Co.*, 2021 WL 1978560, at *4 (S.D.N.Y. May 17, 2021).

## ARGUMENT

### I. Withdrawal of the Reference Is Mandatory

Courts have found mandatory withdrawal to be warranted where, as here, adversary proceedings feature federal security law claims. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 288 n.1 (2d Cir. 1992) ("Because the Securities Claims necessitated an examination of federal securities laws, [the district court] properly withdrew those claims from the bankruptcy court."); *Bear, Stearns Sec. Corp. v. Gredd*, 2001 WL 840187, at *4 (S.D.N.Y. July 25, 2001) ("It is sufficient to note that answering this question will require us to interpret the various provisions of the federal securities laws … regardless of whether we ultimately find federal securities law to be dispositive."); *Mishkin v. Ageloff*, 220 B.R. 784, 796 (S.D.N.Y. 1998) (granting mandatory withdrawal where claims "generated important matters of first impression" related to federal securities law); *Bernard L. Madoff*, 454 B.R. at 312-14 (granting mandatory withdrawal where claims presented "novel question" of federal securities law).[7]

More generally, courts find withdrawal to be mandatory where an adversary proceeding involves claims or defenses that present important and unsettled issues of non-bankruptcy federal

---

[7] Indeed, it is clear Congress intended the mandatory withdrawal provision to extend to federal securities law claims. *See* 130 Cong.Rec. H1849–50 (daily ed. March 21, 1984) (Rep. Kastenmeier stated that it would cover "cases involving the . . . **Securities and Exchange Act of 1934**, and similar laws.") (emphasis added).

6

law. *See In re SVB Fin. Grp.*, 2023 WL 8622521, at *12 (granting mandatory withdrawal where case "present[ed] a litany of novel and important federal law questions" that would "require a court to determine complicated and novel legal issues"); *Picard v. Sage Realty*, 2021 WL 1987994, at *7 (S.D.N.Y. May 18, 2021) (granting mandatory withdrawal where case involved "a matter of first impression, undecided by the Second Circuit") (citations omitted); *LightSquared Inc. v. Deere & Co.*, 2014 WL 345270, at *4 (S.D.N.Y. Jan. 31, 2014) (granting mandatory withdrawal because the Second Circuit had not yet determined the availability of *Noerr–Pennington* immunity outside of antitrust law and, even if it was available, its application "would be far from straightforward").

With the Amended Complaint, Celsius added a federal securities claim under Section 10(b)(5) of the Securities Exchange Act of 1934 and Rule 10b-5 that involves a significant interpretation—not simple or routine application—of federal securities law. Specifically, this newly added claim requires Celsius to prove: "(1) a material misrepresentation or omission by [Moving Defendants]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014). As particularly relevant here, Celsius alleges that COMP and cTokens are investment contract securities, that it held COMP "by virtue of its borrowing position" on the Protocol, and that it received the cToken cETH "in return" for depositing the token ETH as collateral for its borrowing position. Amended Compl. ¶¶ 53, 55, 87-88.

As a result, Celsius's Section 10(b)(5) claim calls for a judicial determination regarding whether Celsius engaged in a transaction with COMP or cTokens that qualifies as an investment contract pursuant to the test established by in *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946) and its progeny. *See id.* (defining an "investment contract" as a contract or scheme that involves

7

an investment of money in a common enterprise made with a reasonable expectation of profit based predominantly upon the entrepreneurial or managerial efforts of the promoter or other third parties).[8]

Applying *Howey* to Celsius's claims involves many significant questions appropriate for the District Court, such as (1) whether the receipt of COMP or cTokens by virtue of borrowing positions on the Protocol constitutes an "investment of money";[9] (2) whether a reasonable purchaser of COMP would have been motivated by the prospect of returns on an investment, as opposed to COMP's utility as the Protocol's governance token;[10] and (3) whether a holder of COMP or cTokens would have had a reasonable expectation of profits based on the efforts of others, rather than (if anything) based on market forces or their own conduct.[11] *See* Motion to Dismiss at Argument § III.F.2.

While the answer to all three of the above questions is unambiguously "no," *see id.*, what matters for purposes of the Motion here is that resolution of these issues clearly and undoubtedly involves substantial and material consideration of non-bankruptcy federal law. *LightSquared Inc.*

---

[8] COMP or cTokens, in isolation, cannot be a security. District courts have consistently and forcefully differentiated the alleged investment contracts from the tokens that are the subject of the investment contracts and routinely found that "a digital token, [would] not in and of itself [be] a contract, transaction, or scheme that embodies the *Howey* requirements of an investment contract"; instead, "the totality of circumstances surrounding … different transactions and schemes involving the sale and distribution of" COMP or cTokens would determine if those transactions are investment contracts and; thus, securities. *SEC v. Ripple Labs, Inc.*, 682 F. Supp. 3d 308, 324 (S.D.N.Y. 2023) (citations omitted); *see also* Motion to Dismiss at Argument § III.F.2 (collecting cases).

[9] *See, e.g., Howey*, 328 U.S. at 298 (under the "blue sky" laws in existence prior to the Securities Act—and relevant to the ultimate holding in *Howey*—an "[i]nvestment contract thus came to mean a contract or scheme for the placing of capital or laying out of money"); *SEC v. Coinbase, Inc.*, 726 F. Supp. 3d 260, 300 (S.D.N.Y. 2024) (explaining that the "investment of money" element requires a risk of loss, and that "this requirement makes sense, for if an investor did not risk financial loss, the need for the protection of the federal securities laws would be obviate[ed]").

[10] *See United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 852-53, (1975) ("[W]hen a purchaser is motivated by a desire to use or consume the item purchased . . . the securities laws do not apply.").

[11] *See Long v. Shultz Cattle Co.*, 881 F.2d 129, 137 n.8 (5th Cir. 1989) ("[I]f the investor has made her own investment decisions—then the profitability of her investment turns not on the managerial efforts of others, but on her own decision and on market forces.").

8

*v. Deere & Co.*, 2014 WL 345270, at *2 (S.D.N.Y. Jan. 31, 2014) (citations omitted) ("In determining whether withdrawal is mandatory, the [District] Court need not evaluate the merits of the parties' claims; rather, it is sufficient for the [District] Court to determine that the proceeding will involve consideration of federal non-bankruptcy law."). Further, the novelty of *Howey*'s application to blockchain-based digital asset transactions makes mandatory withdrawal here especially appropriate. *See SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 177 (S.D.N.Y. 2020) ("Few courts in this Circuit have had the opportunity to apply *Howey* in the context of cryptocurrency. The Second Circuit has not yet spoken on the issue. . . .").[12]

## II. Cause Exists Here for Permissive Withdrawal

### A. The Bankruptcy Court Does Not Have Final Adjudicative Authority

In *Stern v. Marshall*, 564 U.S. 462 (2011), the Supreme Court held that a bankruptcy court lacks constitutional authority to finally adjudicate a claim unless: (1) the defendant filed a proof of claim in the bankruptcy proceeding, (2) the parties consented to have the bankruptcy court enter final judgment, and (3) the right being adjudicated is public rather than private. *Id.* at 488–95; *In re Empire Stat Grp., LLC*, 2024 WL 3666381, at *2-3 (S.D.N.Y. Aug. 5, 2024). None—not one—of these exceptions apply here.

*First*, Moving Defendants did not file a proof of claim in the bankruptcy proceeding.

*Second*, Moving Defendants expressly did not consent to the Bankruptcy Court entering final judgment. *See* Motion to Dismiss at Notice of Motion.

---

[12] Additionally, Celsius will have to prove that it "bought or sold the securities about which the misstatements were made" in order to have statutory standing to bring its Section 10(b)(5) claim. *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F. 4th 82, 86 (2d Cir. 2022). As already discussed, Celsius alleges (deemed admission) in the Amended Complaint that it owned COMP "by virtue of its borrowing position," and received the cToken cETH "in return" for depositing the token ETH as collateral for its borrowing position, but not that it actually purchased or sold either COMP or cTokens. Amended Compl. ¶¶ 53, 55, 88. Thus, while Celsius has not shown a basis for statutory standing, *see* Motion to Dismiss at Argument § III.A, determination of this issue will involve another significant interpretation of non-bankruptcy federal law, which is particularly true since *Menora* has not been applied in the context of transactions involving blockchain-based digital assets.

9

***Third***, none—not one—of the claims being adjudicated here implicate a public right. *See SEC v. Jarkesy*, 603 U.S. 109, 133 (2024) (finding anti-fraud provisions of federal securities laws implicated private rights); *In re Jacoby & Meyers-Bankr. LLP*, 2017 WL 4838388, at *4 (S.D.N.Y. Oct. 25, 2017) (finding negligence and breach of fiduciary duty claims involved private rights).

Because none of the *Stern* exceptions apply, the Bankruptcy Court "does not have constitutional authority to enter a final judgment in this matter" and "would be limited to submitting proposed findings of fact and conclusions of law for *de novo* review by the district court." *Roman Cath. Diocese of Rockville Ctr.*, 2021 WL 1978560, at *4. "This threshold determination is important because it has an impact on the [District] Court's consideration of whether the remaining *Orion* factors show that cause exists to withdraw the bankruptcy reference." *Id.*

### B. The Adversary Proceeding Is a Non-Core Matter[13]

"A core claim invokes a substantive right under the Bankruptcy Code or that could arise only in the context of a bankruptcy case whereas a non-core claim is related to a case under title 11 and might have a conceivable effect on the estate. *Roman Cath. Diocese of Rockville Ctr.*, 2021 WL 1978560, at *5 (citations omitted); *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448 (2d Cir. 2005) (stating core claims are "directly related to a bankruptcy court's central functions"). Alternatively, "a claim is non-core if it does not depend on bankruptcy laws for its existence and

---

[13] "The Second Circuit has not addressed how the threshold inquiry established in *Orion* should be applied in light of the Supreme Court's decision in *Stern* …. Some courts [in this District] have replaced the threshold core/non-core distinction … with the question of constitutional authority identified in *Stern*. Other courts have maintained [the] core/non-core distinction but added *Stern*'s constitutional authority inquiry as an additional threshold step." *In re Empire Stat Grp.*, 2024 WL 3666381, at *2 & n.1-2 (collecting cases). Regardless, Celsius's claims are clearly and unambiguously non-core.

could proceed in a court that lacks federal bankruptcy jurisdiction." *Scott v. AIG Prop. Cas. Co.*, 2017 WL 1380607, at *3 (S.D.N.Y. Apr. 17, 2017) (citations omitted).

Celsius's claims are non-core as they in no way turn on bankruptcy law or depend on federal bankruptcy jurisdiction. *See, e.g.*, *In re Iannacchino*, 2018 WL 1009279, at *3 (S.D.N.Y. Feb. 20, 2018) (finding professional malpractice and breach of fiduciary duty claims "based on pre-petition conduct" were non-core); *In re FMI Forwarding Co., Inc.*, 2004 WL 1348956, at *4 (S.D.N.Y. June 16, 2004) ("[C]ourts in this Circuit have consistently found professional malpractice claims arising out of pre-petition misconduct to be non-core.") (collecting cases); *In re Arbco Cap. Mgmt., LLP*, 479 B.R. 254, 266 (S.D.N.Y. 2012) (finding claims for negligence and breach of fiduciary duty "involve non-core proceedings and are indisputably private rights"); *Crypto Colo Ctr. Corp. v. Dei Vitae Enterprises, LLC*, 2024 WL 1605380, at *3 (W.D.N.C. Mar. 4, 2024) (finding federal securities fraud claim was non-core). Accordingly, Celsius's one conclusory statement in the Amended Complaint that the Adversary Proceeding "constitutes a 'core' proceeding" (Amended Compl. ¶ 17) is specious and lacks any support or merit.

### C. The Remaining Orion Factors Favor Withdrawal

*First*, it would not be judicially efficient for the Adversary Proceeding to remain before the Bankruptcy Court; the Bankruptcy Court does not have the constitutional authority to finally adjudicate Celsius's claims against Moving Defendants and would be limited to submitting proposed findings of fact and conclusions of law for *de novo* review by the district court. As a result, it is simply "inefficient to allow proceedings to go forward knowing that they will have to be substantially repeated." *In re Empire Stat Grp.*, 2024 WL 3666381, at *6 (citations omitted). Moreover, the Adversary Proceeding is still in the early stages; although Moving Defendants filed the Motion to Dismiss, it is not fully briefed and remains undecided. *Roman Cath. Diocese of*

*Rockville Ctr.*, 2021 WL 1978560, at *10 (finding withdrawing the reference would be the "most efficient course of action" where defendant had filed an answer and its motion for judgment on the pleadings was pending); *see LightSquared Inc.*, 2014 WL 345270, at *6 ("[B]ecause the Adversary Proceeding is still in its relatively early stages, withdrawal will not impose undue cost or delay on the parties."). Accordingly, "[b]ecause the claims at issue are recently filed … claims that the bankruptcy court does not have any specialized familiarity of or experience with, withdrawing the reference will avoid the duplication of effort in resolving the case and is therefore a more efficient use of judicial resources." *In re Empire Stat Grp.*, 2024 WL 3666381, at *7.

***Second***, withdrawal of the reference would not hinder the uniform administration of bankruptcy law or intra-case uniformity. Because the Adversary Proceeding concerns non-core common law and federal securities law claims, there is no benefit to the uniform administration of bankruptcy law by having the Bankruptcy Court decide the claims alleged here in the Amended Complaint. *Dynegy Danskammer, LLC v. Peabody COALTRADE Int'l Ltd.*, 905 F. Supp. 2d 526, 533 (S.D.N.Y. 2012) ("[C]ourts have found a benefit [to the uniformity of bankruptcy administration] where the claims are based on bankruptcy law itself" but "have found no benefit where claims are based on state law."). Moreover, the non-core nature of Celsius's claims means that withdrawal of the reference would also not lead to inconsistent rulings between this Court and the Bankruptcy Court. *In re Empire Stat Grp.*, 2024 WL 3666381, at *8 ("[T]his is a non-core claim distinct from the underlying bankruptcy proceeding. Thus, having a district court decide this matter would not result in inconsistent rulings between the district court and bankruptcy court.").

***Third***, Moving Defendants have asserted their right to a jury trial, and "[b]ankruptcy courts are prohibited from conducting jury trials on claims over which they lack final adjudicative authority." *In re Empire Stat Grp.*, 2024 WL 3666381, at *8. The jury trial invocation also "weighs

in favor of withdrawal of the reference." *In re Iannacchino*, 2018 WL 1009279, at *3; *see Nitel, Inc. v. Cerberus Bus. Fin., LLC*, 2021 WL 5770933, at *2 (S.D.N.Y. Dec. 3, 2021) ("[T]he Court is unpersuaded that efficiency is best served by maintaining a non-core proceeding in bankruptcy court until the time that the parties are ready to commence trial.").

***Fourth and finally***, there is no indication that Moving Defendants are motivated by forum shopping, "as opposed to a genuine desire for more efficient adjudication." *Dynegy Danskammer*, 905 F. Supp. 2d at 533. (In fact, it was Celsius's actions with the inclusion of the securities claim that mandated the Motion here.) Further, as of the date of the Motion, the Motion to Dismiss briefing is not complete and, therefore, the Bankruptcy Court has not made any substantive ruling on Celsius's claims or Moving Defendants' defenses. Moreover, any concerns of forum shopping are "eliminate[d]" because "due to the bankruptcy court's limited adjudicative authority, these claims may end up before a district court irrespective of the outcome of this motion." *In re Empire Stat Grp.*, 2024 WL 3666381, at *8. Accordingly, all the *Orion* factors favor withdrawal of the reference.

## **CONCLUSION**

For the foregoing reasons, the Moving Defendants respectfully request that the District Court withdraw the reference of the Adversary Proceeding pursuant to 28 U.S.C. § 157(d).

Dated: New York, New York
January 27, 2025

**MORRISON COHEN LLP**

By: */s/ Jason P. Gottlieb*
    Jason P. Gottlieb
    Heath D. Rosenblat
    Michael Mix
    Rachel Fleder

909 Third Avenue, 27th Floor
New York, New York 10022-4784
(212) 735-8600
jgottlieb@morrisoncohen.com
hrosenblat@morrisoncohen.com
mmix@morrisoncohen.com
rfleder@morrisoncohen.com

*Counsel for Compound Labs, Inc., Robert Leshner, and Geoffrey Hayes*