Mitchell P. Hurley
Dean L. Chapman Jr.
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Elizabeth D. Scott (admitted *pro hac vice*)
Nicholas R. Lombardi (admitted *pro hac vice*)
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
*Counsel for Plaintiff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,[1]<br><br>          Post-Effective Date Debtors. | Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>Jointly Administered |
| MOHSIN Y. MEGHJI, LITIGATION ADMINISTRATOR, AS REPRESENTATIVE FOR THE POST-EFFECTIVE DATE DEBTORS,<br><br>          Plaintiff,<br>      v.<br>COMPOUND LABS, INC., COMPOUND DAO, ROBERT LESHNER, and GEOFFREY HAYES,<br><br>          Defendants. | <br><br><br><br>Adversary Proceeding<br>Case No. 24-03989 (MG) |

**RESPONSE TO DEFENDANTS COMPOUND LABS, INC., ROBERT LESHNER, AND
GEOFFREY HAYES'S MOTION TO DISMISS THE AMENDED COMPLAINT**

---

[1] The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ........................................................................................................3
    I.      Compound and Compound Labs ..............................................................4
    II.     Defendants Make Material Misstatements of Fact ..................................5
    III.    The Compound DAO ..............................................................................6
    IV.    The November 2020 Liquidation Event ..................................................6

LEGAL STANDARD ..................................................................................................7

ARGUMENT ...........................................................................................................8
    I.      None of Plaintiff's Claims Are Time-Barred ..........................................8
          A.     The Securities Fraud and Breach of Fiduciary Duty Claims Relate Back to the Filing of the Original Complaint ..................................9
          B.     The Claims Against Defendants Compound DAO, Leshner, and Hayes Relate Back to the Filing of the Original Complaint ....................11
    II.     Plaintiff Adequately Pleaded His Negligence-Based Claims ................14
          A.     New Jersey Law Applies to Plaintiff's Negligence Claims ......................14
          B.     The Economic Loss Doctrine Does Not Bar Plaintiff's Negligence Claims ...........................................................15
          C.     Plaintiff Has Adequately Alleged Defendants Owed Celsius a Duty of Care ...................................................................17
          D.     Plaintiff Has Adequately Alleged Breach ............................................20
          E.     Defendants' Other Arguments Regarding Plaintiff's Negligence Claims Fail ......................................................................21
                1.     Expert Testimony Is Not Required to Plead Plaintiff's Professional Negligence Claim ................................................21
                2.     Plaintiff Has Adequately Alleged a Claim for Negligent Misrepresentation ..................................................21
    III.    Plaintiff Adequately Pleaded a Rule 10b-5 Violation ..........................22
          A.     The COMP and cETH Tokens Are Securities ..........................................22
                1.     Investments of Money ...............................................24
                2.     Common Enterprise ....................................................24
                 3.     Reasonable Expectation of Profits ...............................25
           B.     Celsius Has Standing as a Beneficial Owner of cETH and COMP ..........27
           C.     The Whitepaper Forms the Basis of a Material Misstatement or Omission ....................................................................29
           D.     Celsius Justifiably Relied on the Statements in the Whitepaper ..............32
           E.     Celsius Sufficiently Pleaded Facts Supporting an Inference of Scienter ...................................................................33
           F.     Plaintiff Adequately Alleged Loss Causation ............................35
    IV.    Plaintiff Adequately Pleaded Breach of Fiduciary Duty ......................36
          A.     Plaintiff Has Adequately Alleged the Compound DAO Is a Partnership .................................................................36
          B.     Plaintiff Has Adequately Alleged a Breach of Duty ..................40

CONCLUSION .......................................................................................................40

**<u>TABLE OF AUTHORITIES</u>**

**Cases**                                                                                               **Page(s)**

*2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assurance Co.*,
    96 F. Supp. 3d 182 (S.D.N.Y. 2015)................................................................14, 36

*Allegaert v. Perot*,
    78 F.R.D. 427 (S.D.N.Y. 1978) ........................................................................32

*Anderson v. Sammy Redd & Assocs.*,
    650 A.2d 376 (App. Div. 1994) ........................................................................20

*Anwar v. Fairfield Greenwich Ltd.*,
    728 F. Supp. 2d 372 (S.D.N.Y. 2010)...............................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................8

*Balestra v. ATBCOIN LLC*,
    380 F. Supp. 3d 340 (S.D.N.Y. 2019)...............................................23, 25, 26

*In re Barclays PLC Sec. Litig.*,
    No. 22 Civ. 8172 (KPF), 2024 WL 757385 (S.D.N.Y. Feb. 23, 2024) ............30, 31

*Bayer Healthcare Pharms. Inc. v. RJ Health Sys. Int'l LLC*,
    Civ. No. 15-6952 (KM) (MAH), 2017 U.S. Dist. LEXIS 8060 (D.N.J. Jan. 20,
    2017) ...................................................................................................................17

*Bell Atl. v. Twombley*,
    550 U.S. 544 (2007)............................................................................................8

*In re Blackbaud, Inc. Customer Data Breach Litig.*,
    567 F. Supp. 3d 667 (D.S.C. 2021)...................................................................19

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975)..........................................................................................27

*Buran v. Coupal*,
    87 N.Y.2d 173 (1995) ..................................................................................11, 12

*Caiola v. Citibank, N.A., N.Y.*,
    295 F.3d 312 (2d Cir. 2002)..............................................................................28

*CFTC v. Ooki DAO*,
    Case No. 3:22-cv-05416-WHO, 2022 WL 17822445 (N.D. Cal. Dec. 20,
    2022) ...................................................................................................................18

*City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*,
   587 F. Supp. 3d 56 (S.D.N.Y. 2022)..............................................................................33, 36

*In re Coinbase Glob., Inc. Sec. Litig.*,
   Case No. 2:22-cv-04915 (BRM) (LDW), 2024 WL 4053009 (D.N.J. Sept. 5,
   2024........................................................................................................................... *passim*

*Colucci v. Bank of Am., N.A.*,
   No. CV 10-1000 (WHW), 2011 WL 13364575 (D.N.J. Mar. 28, 2011)................................22

*Cruz v. Rose Assocs., LLC*,
   No. 13 Civ. 0112 (JPO), 2013 WL 1387018 (S.D.N.Y. Apr. 5, 2013)....................................7

*CW Int'l Sales LLC v. Glob. Source, Ltd.*,
   Civ. Action No. 22-06120 (RK) (RLS), 2024 U.S. Dist. LEXIS 63660 (D.N.J.
   Apr. 8, 2024).............................................................................................................................22

*Dean v. Barrett Homes, Inc*.,
   8 A.3d 766 (N.J. 2010).............................................................................................................15

*Deutsche Zentral-Genossenchaftsbank A.G.*, No. 12 Civ. 4025(AT), 2013 WL
   6667601 (S.D.N.Y. Dec. 17, 2013) ..........................................................................................14

*Dunphy v. Gregor*,
   642 A.2d 372 (N.J. 1994)..........................................................................................................17

*Fabian v. LeMahieu*,
   Case No. 19-cv-00054-YGR, 2019 U.S. Dist. LEXIS 172906 (N.D. Cal. Oct.
   4, 2019) ................................................................................................................................16, 19

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*,
   902 F. Supp. 2d 476 (S.D.N.Y. 2012).......................................................................................33

*Freudenberg v. E*Trade Fin. Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010)..................................................................................29, 30

*Glob. Fin. Corp. v. Triarc Corp.*,
   715 N.E.2d 482 (N.Y. 1999)................................................................................................14, 15

*GlobalNet Financial.com, Inc. v. Frank Crystal & Co.*,
   449 F.3d 377 (2d Cir. 2006)......................................................................................................14

*Gross v. GFI Grp., Inc.*,
   162 F. Supp. 3d 263 (S.D.N.Y. 2016)........................................................................................35

*In re Hart*, Lead Case No. 09-71053, 2014 WL 1018087 (Bankr. N.D. Cal. Mar.
   14, 2014) ...................................................................................................................................39

*Highlands Ins. Co. v. Hobbs Grp., LLC.*,
  373 F.3d 347 (3d Cir. 2004)........................................................................................21

*Hosking v. TPG Cap. Mgmt., L.P. (In re Hellas Telecomms. (Lux.) II SCA)*,
  535 B.R. 543 (Bankr. S.D.N.Y. 2015) ........................................................................14

*Houghton v. Compound DAO*,
  No. 22-cv-7781-WHO (N.D. Cal. June 22, 2023) ...............................................4, 23

*Jones v. Goodman*,
  271 Cal. Rptr. 3d 487 (Cal. Ct. App. 2020) ................................................................37

*Kaplan v. Khanna*,
  48 Misc. 3d 665 (N.Y. Sup. Ct. 2015) ..........................................................................9

*Kendall v. Cuomo*,
  No. 12 Civ. 3438 (RLE), 2013 WL 5425780 (S.D.N.Y. Sept. 27, 2013)...................8

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) .....................................................................................................14

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
  108 F.3d 1531 (2d Cir. 1997).......................................................................................14

*Lea v. TAL Educ. Grp.*,
  837 F. App'x 20 (2d Cir. 2020).....................................................................................35

*Losner v. Cashline, L.P.*,
  303 A.D.2d 647 (N.Y. App. 2003) ...............................................................................11

*Ly v. Lesenskyj*,
  No. CV172203ZNQTJB, 2023 WL 2579889 (D.N.J. Mar. 16, 2023) .....................21

*In re Marriage of Geraci*,
  51 Cal. Rptr. 3d 234 (Cal. Ct. App. 2006) ..................................................................38

*In re Matter of Clairol Dev., LLC v. Vill. of Spencerport*,
  100 A.D.3d 1546 (N.Y. App. Div. 2012) ......................................................................9

*Menora Mivtachim Insur. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82 (2d Cir. 2022) ...................28

*Merkamerica Inc. v. Glover*,
  Case No. CV 19-6111 PSG, 2019 WL 8989833 (C.D. Cal. Dec. 3, 2019) ......30, 31

*Meyer v. Jinkosolar Holdings Co.*,
  761 F.3d 245 (2d Cir. 2014).........................................................................................29

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010).........................................................................................29

*Nat'l Bank of Com. in Pasadena v. Thompson Advert. Co.*,
299 P. 802 (Cal. Dist. Ct. App. 1931) ................................................................. 3

*Natale v. Camden Cnty. Corr. Facility*,
318 F.3d 575 (3d Cir. 2003) .................................................................................. 21

*In re Nemeth v. K-Tooling*,
224 N.E.3d 513 (N.Y. 2023) ................................................................. 11, 12, 13

*O'Connor v. DL-DW Holdings, L.L.C. (In re Extended Stay, Inc.)*,
Case No. 09-13764-JLG, 2020 WL 10762310 (Bankr. S.D.N.Y. Aug. 8, 2020) .................. 19

*O'Halloran v. Metro. Transp. Auth.*,
154 A.D.3d 83 (N.Y. App. Div. 2017) ............................................................. 9, 10

*ODS Cap. LLC v. JA Solar Holdings Co.*,
No. 18-cv-12083 (ALC), 2022 WL 3655525 (S.D.N.Y. Aug. 25, 2022) .............................. 35

*Patriot Expl., LLC v SandRidge Energy, Inc.*,
951 F. Supp. 2d 331 (D. Conn 2013) ................................................................... 33

*People Express Airlines, Inc. v. Consol. Rail Corp.*,
495 A.2d 107 (N.J. 1985) ............................................................................. 16, 18

*Popper v. Indian Spring Golf Ass'n*,
Case No. A-2489-22, 2024 N.J. Super. Unpub. LEXIS 363 (N.J. Super. Ct.
Mar. 7, 2024) ........................................................................................... 20

*Presutti v. Suss*,
254 A.D.2d 785 (N.Y. App. Div. 4th Dept 1998) ............................................... 9, 10

*Probulk Carriers Ltd. v. Peraco Chartering USA LLC*,
No. 11 Civ. 5686 (RJS), 2012 WL 3095319 (S.D.N.Y. July 20, 2012) .................... 7

*Ret. Sys. of Gov't. of the Virgin Is. v Blanford*,
794 F.3d 297 (2d Cir 2015) .......................................................................... 33, 34

*Reves v. Ernst & Young*,
494 US 56 (1990) ......................................................................................... 23

*Richman v. Goldman Sachs Grp., Inc.*,
868 F. Supp. 2d 261 (S.D.N.Y. 2012) ................................................................ 35

*Sahoury v. Meredith Corp.*,
Civ. Action No. 11-5189 (KSH), 2012 U.S. Dist. LEXIS 108122 (D.N.J. Aug.
2, 2012) ................................................................................................... 20

*Samuels v. Dao*,
2024 Case No. 23-cv-06492-VC, 2024 WL 4815022 (N.D. Cal. Nov. 18,
2024) ............................................................................................................... *passim*

*Sanchez v. Indep. Bus Co.*,
817 A.2d 318 (N.J. Super. Ct. App. Div. 2003) ....................................................17

*Sarcuni v. bZx DAO*,
664 F. Supp. 3d 1100 (S.D. Cal. 2023) ........................................................ *passim*

*Schneidman v. Tollman*,
279 A.D.2d 276 (N.Y. App. Div. 2001) ................................................................10

*SEC v. Binance Holdings Ltd.*,
738 F. Supp. 3d 20 (D.D.C. 2024) ........................................................................26

*SEC v. Coinbase, Inc.*,
726 F. Supp. 3d 260 (S.D.N.Y., 2024)............................................................23, 25

*SEC v. Kik Interactive Inc.*,
492 F. Supp. 3d 169 (S.D.N.Y 2020)..........................................................23, 26, 27

*SEC v. Telegram Grp. Inc.*,
448 F. Supp. 3d 352 (S.D.N.Y. 2020) ..................................................................23

*SEC v. Terraform Labs PTE. Ltd.*,
684 F. Supp. 3d 170 (S.D.N.Y. 2023)........................................................... *passim*

*Simon v. KeySpan Corp.*,
694 F.3d 196 (2d Cir. 2012)............................................................................29, 34

*SRC Constr. Corp. v. Atl. City Hous. Auth.*,
935 F. Supp. 2d 796 (D.N.J. 2013) .......................................................................15

*Strauss v. Belle Realty Co.*,
482 N.E.2d 34 (N.Y. 1985) ...................................................................................16

*In re Time Warner Inc. Sec. Litig.*,
9 F.3d 268 (2d Cir. 1993)......................................................................................30

*Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*,
429 B.R. 73 (Bankr. S.D.N.Y. 2010) ....................................................................19

*True Return Sys. LLC v. Compound Protocol*,
No. 22-CV-8483, 2023 WL 6211815 (S.D.N.Y. Sept. 25, 2023)..........................38

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
625 F Supp 3d 164 (S.D.N.Y 2022)..........................................................27, 28, 29

*United Hous. Found., Inc. v. Forman*,
   421 U.S. 837 (1975)................................................................................26

*United States v. Zaslavskiy*,
   No. 17 CR 647 (RJD), 2018 WL 4346339 (E.D.N.Y. 2018)................................23

*In re USAA Data Sec. Litig.*,
   621 F. Supp. 3d 454 (S.D.N.Y. 2022)...........................................................19

*Whitbread (US) Holdings, Inc. v. Baron Philippe de Rothschild, S.A.*,
   630 F. Supp. 972 (S.D.N.Y. 1986) ...............................................................32

*Whiteside v. Hover-Davis, Inc.*,
   995 F.3d 315 (2d Cir. 2021).........................................................................8

*Williams v. Binance*,
   96 F.4th 129 (2d Cir. 2024) ...........................................................23, 28, 31

*Yuille v. Uphold HQ Inc.*,
   686 F Supp 3d 323 (S.D.N.Y. 2023).......................................................34, 35

**Statutes, Regulations, Rules, and Other Authorities**

15 U.S.C. § 78u-4 ................................................................................33, 35

17 C.F.R. § 240.10b-5................................................................... *passim*

17 C.F.R. § 240.10b-5(b).................................................................................31

FED. R. BANKR. P. 7015 ...................................................................................40

FED. R. CIV. P. 4(m)..........................................................................................13

FED. R. CIV. P. 8(a) ..........................................................................................35

FED. R. CIV. P. 9(b) .............................................................................8, 32, 35

FED. R. CIV. P. 12(b)(6) ..............................................................................28, 36

FED. R. CIV. P. 15(a) .......................................................................................40

FED. R. CIV. P. 15(a)(2) ...................................................................................40

FED. R. CIV. P. 15(c)(1)......................................................................................9

FED. R. CIV. P. 15(c)(1)(A), (B) ........................................................................9

FED. R. CIV. P. 15(c)(1)(A) .........................................................................9, 13

Fed. R. Civ. P. 15(c)(1)(B) ............................................................................................9

Fed. R. Civ. P. 15(c)(1)(C) .....................................................................................11, 13

Cal. Code of Civ. Pro. § 343.....................................................................................9

Cal. Corp. Code § 16101(a)(13) .............................................................................39

Cal. Corp. Code § 16202(a).................................................................................36, 37

N.Y. Civ. Prac. L. & Rules Law § 203(c) .............................................................11

Restatement (Second) of Torts § 552 (Am. L. Inst. 2024) ........................................22

CoinMarketCap, Compound Price History, available at
     https://coinmarketcap.com/currencies/compound/historical-data/ .........................................36

Proposal 019: Open Price Feed, Compound Finance (executed Aug. 17, 2020),
     https://compound.finance/governance/proposals/19................................................30

Mohsin Y. Meghji ("Plaintiff" or "Litigation Administrator"), as Litigation Administrator for Celsius Network LLC and its affiliated debtors (collectively, the "Post-Effective Date Debtors") respectfully submits this response in opposition to Defendants Compound Labs, Inc., Robert Leshner, and Geoffrey Hayes's ("Defendants") Motion to Dismiss the Amended Complaint and Memorandum of Law in Support [ECF Nos. 32 and 33] (collectively, the "Motion") and respectfully states as follows.

## PRELIMINARY STATEMENT

As detailed in the First Amended Complaint[2] [ECF No. 22] ("Amended Complaint"), the Defendants induced potential investors to invest in Compound through misstatements that promoted Compound as a trust-based, hack-proof protocol, that pegged its collateral ratios to ten exchanges. Relying on these statements, investors like Celsius placed large positions on the platform. When these statements proved to be untrue as a result of Defendants' gross negligence in linking the price of assets to only one input from Coinbase Pro., Compound users, including Celsius, lost millions.

Through their Motion, Defendants ask the Court to reject the truth of these and other well-pleaded facts in the Amended Complaint, and to instead rule in Defendants' favor based on a counter-narrative of so-called "facts" that appear nowhere in the Amended Complaint and are therefore irrelevant to the Motion, in addition to being materially false and disputed. Each of Defendants' arguments misses the mark, and their Motion should be denied in its entirety.

***First***, none of Plaintiffs' claims are time-barred. The claims Plaintiff added to the Amended Complaint arise out of the same conduct, transaction, or occurrence as alleged in the original Adversary Complaint [ECF No. 1] (the "Original Complaint"), seek recovery from parties that are

---

[2] Capitalized terms used but not defined have the definitions given in the Amended Complaint.

1

united in interest with original Defendant Compound Labs, Inc. ("Compound Labs"), and therefore relate back to the timely filing of the Original Complaint.

**Second**, as to Plaintiff's negligence-based claims, Defendants' arguments rest on the wrong state's law and seek to interpose disputed issues of fact tied to allegations that are not included in the Amended Complaint, have not been subjected to discovery, and are inappropriate for determination at the motion to dismiss stage. The well-pleaded allegations in the Amended Complaint establish that as an investor in the Compound protocol, Celsius was a member of an identifiable and discrete class of particularly foreseeable plaintiffs who stood in a special relationship with Defendants. In connection with that special relationship, Celsius suffered economic losses that were an eminently foreseeable result of Defendants' negligence, and for which New Jersey courts recognize a duty of care. The Defendants plainly breached that duty of care through their negligent design, operation, and maintenance of the Compound protocol, including by exposing its users to exploit by relying on only one source of pricing data. Plaintiff has therefore adequately alleged its negligence-based claims.

**Third**, Defendants misconstrue Plaintiff's securities fraud claim, improperly characterizing Plaintiff's well-pleaded allegations regarding a materially misleading misstatement or omission as not false when made. Defendants also insist that Compound tokens are not securities and that Celsius lacks standing to bring securities claims, while admitting that Celsius is a holder of COMP and cETH, and that the Compound protocol was "based" on the actionable Whitepaper underlying Plaintiff's allegations. Compound tokens fall neatly within the definition of an investment contract under the *Howey* test, something Defendants declined to even contest in other pending litigation related to Defendants' sale of unregistered securities. In reliance on the misrepresentations or omissions in the Whitepaper regarding the number of inputs for the Price Feeds, Celsius invested

assets in the Compound protocol and received cETH and COMP in exchange for its investment. However, because the Pricing Feed was tied to just one input—not multiple sources as Defendants represented, but knew to be false (or were consciously reckless of falsity)—Celsius' position was wrongly liquidated, and Celsius suffered a loss that Defendants should have prevented. At best, as with Defendants' arguments concerning Plaintiff's negligence claims, Defendants' Motion asserts a multitude of fact issues, and discovery should be permitted to allow Plaintiff the opportunity to investigate and prove its claim under the Securities and Exchange Act of 1934, 17 C.F.R. § 240.10b-5 ("Rule 10b-5").

**Fourth**, and finally, Plaintiff has adequately alleged that the Compound Decentralized Autonomous Organization ("DAO") is a general partnership. The Amended Complaint alleges the Compound DAO is an association of two or more persons, carrying on the Compound Protocol for profit as co-owners through the governance rights afforded to them by virtue of their COMP tokens. As multiple courts have concluded when considering nearly identical allegations involving DAOs, this is sufficient to allege a general partnership under relevant law. By forming the DAO, Defendants may have tried to insulate the Compound protocol from accountability for compliance with U.S. law, but "[c]ourts do not countenance partnerships which attempt to afford all the advantages of commercial intercourse without corresponding liabilities, and an agreement which contemplates such evasion will be construed and enforced as a general partnership." *Nat'l Bank of Com. in Pasadena v. Thompson Advert. Co.*, 299 P. 802, 803 (Cal. Dist. Ct. App. 1931); *see also Sarcuni v. bZx DAO*, 664 F. Supp. 3d 1100, 1117-18 (S.D. Cal. 2023).

For the foregoing reasons and those set forth below and in the Amended Complaint, Defendants' Motion is meritless and should be denied in its entirety.

## **BACKGROUND**

The well-pleaded allegations in the Amended Complaint – set forth in pertinent part below

and accepted as true at this stage of the proceedings – adequately allege each of the claims asserted.

## I.    Compound and Compound Labs

In 2017, Defendants Leshner and Hays co-founded Compound Labs with the purported purpose of establishing a functioning money market for blockchain assets. AC ¶ 25. Compound Labs built the Compound Protocol and its affiliated technologies and products ("Compound"). Compound is a decentralized finance ("DeFi") protocol built on the Ethereum blockchain. Compound Labs promoted Compound as a peer-to-peer borrowing system that avoided many of the risks presented by centralized exchanges. *Id.* at ¶ 27. Compound stated that centralized exchanges were "trust-based systems" and that users on centralized exchanges had to "trust that the exchange won't get hacked, abscond with your assets, ***or incorrectly close out your position***" and that Compound, as a decentralized system, avoided "the flaws of existing approaches" such as hacks, theft, or "incorrectly clos[ing] out a position." *Id.*

Compound was, according to Defendants, designed to allow users to lend and borrow cryptocurrencies in such a manner that users could earn interest by investing assets, or borrowing against their deposited collateral. *Id.* at ¶¶ 28-30. Through Compound, users can "lock" (similar to depositing) assets into a community pool from which other users can borrow after posting collateral. Compound's required collateral ratios are determined not by a market, but by whomever controls the protocol. *Id.* at ¶ 29. When users invest in a Compound liquidity pool, they are issued "cTokens" like cETH that track their earned interest. *Id.* at ¶ 30. For example, a user who posts ETH to borrow assets on Compound would receive cETH tokens to denote their investment ownership rights and to earn interest and rewards in the form of cTokens. *Id.* The exchange rate between cTokens and the underlying asset changes so that when depositors redeem their cTokens, they are expected to receive more of the underlying asset than their initial deposit. *Id.*

To further induce borrowing on the platform, users receive COMP tokens for investing on

the platform. *Id.* at ¶ 31. Compound earns money on the "spread," which is the difference between the interest rate that borrowers pay when taking out loans on the platform and the interest rate lenders earn when depositing assets on the platform. *Id.* The spread is collected and controlled by COMP holders who collect a defined commission on each outstanding loan. *Id.*

## II. Defendants Make Material Misstatements of Fact

To induce potential investors to use and invest assets in the Compound protocol, Defendants Leshner and Hayes authored a whitepaper that Compound Labs initially issued in February 2019 regarding the manner in which the Compound protocol was designed and would operate (the "Whitepaper"). *Id.* at ¶ 32. Compound v2 was the operative version of Compound until in or around August 2022, and Compound Labs continues to prominently publish the Compound Whitepaper on its website under the Compound v2 documentation to this day. *Id.*

Through the Whitepaper, Compound claims that it offers users the ability to borrow assets by utilizing collateralized lines of credit in the Ethereum ecosystem. *Id.* at ¶ 34. The interest rate of these loans is not negotiated by its user, but rather is set automatically by certain features of the protocol. *Id.* at ¶ 35. To permit these loans, Compound has a "collateral ratio" requirement, and "[a]ccounts can take no action (e.g. borrow or withdraw) that would bring [their] value below our desired ratio; to increase (or reset) the collateral ratio." *Id.* at ¶ 36. Compound additionally has an automatic liquidation feature in place to maintain an account's collateral ratio. *Id.* at ¶ 37. Pursuant to this feature, if a user falls below the required collateral ratio, the user's collateral automatically becomes available to purchase at the current market price minus a liquidation discount. *Id.* And Compound had no feature, procedure, mechanism, or any other control feature to protect against exploits, hacks, or misuse of the protocol. *Id.* at ¶ 39. For purposes of determining the required collateral ratio and other functions, the Whitepaper stated (the "Price Feeds" statement) that, "A

*Price Oracle* maintains the current exchange rate of each supported asset; the Compound protocol delegates the ability to set the value of assets to a committee which pools prices from the ***top 10 exchanges***." *Id.* at ¶ 41. But that statement was false.

## III.  The Compound DAO

In February 2020, Defendants Leshner and Hayes began the process of transferring the Compound protocol to a newly created partnership of Compound users called the Compound DAO. *Id.* at ¶ 43. In a DAO, there are no formal corporate structures, no explicit liability protections, and no distinction between managers and directors or general partners. *Id.* Holders of specific tokens have governance rights that allow them to suggest and vote on actions relevant to the DAO. *Id.* To facilitate the transition to the Compound DAO, Compound Labs created a security called COMP. *Id.* at ¶ 44. COMP was marketed as a "governance token," and was programmed so that only 10,000,000 COMP tokens may ever be issued. *Id.* COMP tokens are a claim on the DAO's future earnings, and so are analogous to interest in a partnership. *Id.* at ¶ 46. The first COMP tokens were issued in early 2020 to shareholders and founders of Compound Labs, including Defendants Leshner and Hayes, who still retain control over the DAO. *Id.* at ¶ 47.

Although Defendants touted "community governance," at all times relevant to the Amended Complaint, Defendants Leshner, Hayes, and Compound Labs exercised control over the operations of the Compound protocol and/or the Compound DAO. *Id.* at ¶¶ 49, 52.

## IV.  The November 2020 Liquidation Event

As of November 2020, Celsius had entered into borrowing positions on the Compound platform for DAI and USDT. *Id.* at ¶ 55. Celsius invested Ether ("ETH") as collateral on Compound and received Compound Ether ("cETH") in return. *Id.* Celsius then borrowed DAI and USDT through the protocol with its invested ETH as collateral for repayment of the loans. *Id.*

Assuming that the account was otherwise appropriately collateralized to support its borrowing positions, cETH could be exchanged for ETH at any time. *Id.* However, if the collateral ratio fell below the acceptable level, then the cETH was subject to automatic, immediate liquidation. *Id.*

That is just what occurred. On November 26, 2020, the price of DAI on the Coinbase Pro exchange falsely indicated that the current price of DAI had skyrocketed approximately 30% to $1.30 (the "November 2020 Liquidation"). *Id.* at ¶ 57. Although the price spike to $1.30 was only momentary, this caused the wrongful liquidation of valuable collateral associated with loan positions on Compound, including Celsius cETH equivalent to more than 50,000 Celsius ETH. *Id.* The wrongful liquidation of Celsius' property would not have occurred if the price oracle system relied on the "top 10" exchanges, as the Defendants falsely represented, instead of its actual reliance on just a single input price oracle system. *Id.* at ¶ 58.

Celsius was directly harmed as a result of this negligence. *Id.* at ¶ 60. Because of the DAI price spike, Compound initiated a series of eight liquidation transactions in a Celsius wallet, resulting in a total of 2,509,770.21 cETH being taken from the wallet and distributed to various liquidator wallets. *Id.* That 2,509,770.21 cETH would have been redeemable for a total of 50,268.9529 ETH. *Id.*

## LEGAL STANDARD

In deciding a motion to dismiss, the Court must "accept as true all of the factual allegations contained in the complaint, drawing all inferences in the light most favorable to the non-moving party[]." *Cruz v. Rose Assocs., LLC*, No. 13 Civ. 0112 (JPO), 2013 WL 1387018, at *2 (S.D.N.Y. Apr. 5, 2013) (citations and internal quotations omitted); *see also Probulk Carriers Ltd. v. Peraco Chartering USA LLC*, No. 11 Civ. 5686 (RJS), 2012 WL 3095319, at *64 (S.D.N.Y. July 20, 2012). To meet the familiar standard of "plausibility," a complaint need only include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged," and raise that potential for relief "above the speculative level." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. v. Twombley*, 550 U.S. 544, 555 (2007). "Therefore, on a motion to dismiss, the appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims. "Dismissal for failure to state a claim on which relief could be granted is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Kendall v. Cuomo*, No. 12 Civ. 3438 (RLE), 2013 WL 5425780, at *3 (S.D.N.Y. Sept. 27, 2013) (citation omitted). To satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, which applies only to Plaintiff's Rule 10b-5 claim, "a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021) (quoting FED. R. CIV. P. 9(b)).

## ARGUMENT

### I.    None of Plaintiff's Claims Are Time-Barred

Defendants argue the claims added to the Amended Complaint are barred by applicable statutes of limitations.[3] But the claims Plaintiff added all arise out of the same conduct, transaction, or occurrence as alleged in the Original Complaint and seek recovery from parties that are united in interest with original Defendant Compound Labs and are accordingly charged with notice of the claims. They therefore relate back to the timely filing of the Original Complaint.

---

[3] The Amended Complaint added claims for securities fraud against all Defendants; breach of fiduciary duty against Defendants Compound Labs, Leshner, and Hayes, and negligent misrepresentation and professional malpractice against Defendants Leshner and Hayes.

## A. The Securities Fraud and Breach of Fiduciary Duty Claims Relate Back to the Filing of the Original Complaint[4]

Federal Rule of Civil Procedure 15(c)(1) provides that an amendment to a pleading relates back to the date of the timely filed original pleading when "(A) the law that provides the applicable statute of limitations allows relation back" or "(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(A), (B). As the court looks to the law of the forum when determining choice of law, and New York applies the law of the forum for procedural issues such as relation back, New York law governs relation back with respect to the Rule 15(c)(1)(A) analysis. *See Kaplan v. Khanna,* 48 Misc. 3d 665, 667 (N.Y. Sup. Ct. 2015).

The New York standard for relation back mirrors the test set forth in Federal Rule of Civil Procedure 15(c)(1)(B). Under New York law, "[a] claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading." N.Y. Civ. Prac. L. & Rules law ("CPLR") § 203(f) (McKinney 2022). Causes of action added to an amended complaint therefore relate back to the filing of the initial complaint when they "merely added new theor[ies] of recovery arising out of a transaction already at issue in litigation." *Presutti v. Suss*, 254 A.D.2d 785, 785 (N.Y. App. Div. 4th Dept 1998); *In re Matter of Clairol Dev., LLC v. Vill. of Spencerport*, 100 A.D.3d 1546, 1546-47 (N.Y. App. Div. 2012); *O'Halloran v. Metro. Transp. Auth.*, 154 A.D.3d 83, 87 (N.Y. App. Div. 2017). The original complaint need not put defendants

---

[4] Plaintiff's breach of fiduciary duty claim was filed within the applicable four-year statute of limitations in any event and is therefore not subject to dismissal on limitations grounds. *See, e.g.*, Cal. Code of Civ. Pro. § 343 (setting forth four-year statute of limitations for breach of fiduciary claims, which applies as shorter than New York's six-year limitations period applicable to breach of fiduciary duty claims sounding in fraud).

"on notice of every factual allegation on which the subsequent claims depend," so long as "the original complaint put them on notice of the occurrences that underlie those claims." *O'Halloran*, 154 A.D.3d at 87-88 (citing *Schneidman v. Tollman*, 279 A.D.2d 276, 276 (N.Y. App. Div. 2001)).

The securities fraud and breach of fiduciary duty claims Plaintiff added to the Amended Complaint here are textbook examples of claims that merely add new theories of recovery arising out of the transactions and occurrences already set forth in the Original Complaint. Indeed, both claims arise out of the November 2020 Liquidation Event resulting from Defendants' negligent decision to link the price of assets on the Compound protocol to one input from Coinbase Pro and the false statements Defendants made in the Price Feeds statement, which indicated prices would be pooled from the top ten exchanges – all of which was alleged in the Original Complaint. *See, e.g.*, AC ¶¶ 4-6, 33-34, 37-41.

Defendants complain that the Amended Complaint added facts regarding the Compound DAO and COMP securities, Mot. at 17, but the Original Complaint need not have put Defendants on notice of every factual allegation upon which the subsequent claims depend for relation back to apply. *See, e.g.*, *O'Halloran*, 154 A.D.3d at 87-88. Relation back applies so long as the Original Complaint put Defendants on notice of the occurrences underlying the claims. Plaintiff's securities fraud and breach of fiduciary duty claims arise out of the same conduct, transaction, or occurrence set out in the Original Complaint. Defendants were therefore on notice of the occurrences underlying those claims, and Plaintiff's securities fraud and breach of fiduciary duty claims relate back to the date of filing of the Original Complaint. *See, e.g.*, *Presutti*, 254 A.D.2d at 785 (statute of limitations did not bar negligence claim where it "merely added a new theory of recovery arising out of transactions already at issue in the litigation"); *O'Halloran*, 154 A.D.3d at 84 (claims for discrimination based on sexual orientation related back where new claims were based on same

subject matter alleged in original complaint even though original complaint did not allege plaintiff was a lesbian or that the actions taken against her were motivated by her sexual orientation).

**B.    The Claims Against Defendants Compound DAO, Leshner, and Hayes Relate Back to the Filing of the Original Complaint**

Under New York law, a claim asserted against a new defendant in an amended complaint relates back to claims previously asserted against a co-defendant for statute of limitations purposes where the two defendants are "united in interest." CPLR § 203(c).  This standard is deliberately more relaxed and forgiving than that provided by Federal Rule of Civil Procedure 15(c)(1)(C) and was in fact "[a]imed at liberalizing the strict, formalistic pleading requirements of the past century" to enable "a plaintiff to correct a pleading error – by adding either a new claim or a new party – after the statutory limitations period has expired." *Buran v. Coupal*, 87 N.Y.2d 173, 177 (1995); *see also In re Nemeth v. K-Tooling*, 224 N.E.3d 513, 518 & n.2 (N.Y. 2023).

Under New York's relation back doctrine, claims against a new defendant relate back to those previously asserted against a co-defendant where: (1) both claims arose out of the same conduct, transaction, or occurrence, (2) the new party is united in interest with the original defendant, and by reason of that relationship, can be charged with notice of the institution of the action such that the new party will not be prejudiced in defending against the action, and (3) the new party knew or should have known that, but for a mistake by the plaintiff—be it a simple oversight or a mistake of law (i.e., that the amending party failed to recognize the other party as a necessary party)—the action would have been timely commenced against him as well.  *Nemeth*, 40 N.E .3d at 518.  Parties are united in interest for purposes of the second prong of the relation back standard when their defenses to the claims against them would be the same such that they "either stand or fall together with respect to the plaintiff's claim." *Losner v. Cashline, L.P.*, 303 A.D.2d 647, 648 (N.Y. App. 2003).  To satisfy the third prong, the mistake in not naming the new

defendant need not be excusable.  *Buran*, 661 N.E. 2d at 981-82; *Nemeth*, 224 N.E.3d at 518 ("[T]he relation back doctrine is not limited to cases where the amending party's omission results from doubts regarding the omitted party's identity or status.").  Relation back is liberally allowed where the record does not show the plaintiff intentionally omitted the additional defendants in the original complaint to gain a "tactical advantage."  *See Nemeth*, 224 N.E. 3d. at 520.

The claims against Defendants Leshner and Hayes[5] all arise out of the same conduct, transaction, or occurrence alleged in the Original Complaint, as set forth in greater detail above with respect to the securities fraud and breach of fiduciary duty claims and because the other claims were specifically included in the Original Complaint.  It is likewise clear that Defendants Leshner and Hayes are united in interest with original Defendant Compound Labs.  Defendants Leshner and Hayes are the co-founders of Compound Labs, serve as directors and officers of Compound Labs, and authored the Whitepaper that is at the very center of this lawsuit.  AC ¶¶ 14-15, 25, 32. Defendants Leshner and Hayes are represented by the same counsel as Compound Labs, and their defenses will literally stand or fall together with Compound Labs as they filed a single, joint Motion to Dismiss.  Given the close relationship between the Defendants, Defendants Leshner and Hayes can fairly be charged with notice of the institution of the action and notice that but for a mistake, they would have been named in the Original Complaint.  *See, e.g.*, *Nemeth*, 224 N.E.3d at 521 (defendants were united in interest where new defendant owned the property affected by the variance at issue in the case, signed the use variance on behalf of the businesses operating a non-conforming use on the property and was represented by the same counsel as the other defendants).

---

[5] As Defendant Compound DAO has not joined Defendants' Motion, Plaintiff directs its arguments in this section at new Defendants Leshner and Hayes.  The arguments would apply, however, with equal force to Defendant Compound DAO, which is similarly united in interest with Defendant Compound Labs, as Defendants implicitly recognize in their Motion.  Mot. at 1 n.2 (arguing that the defenses raised in the Motion would apply with equal force to the DAO).

Nor have Defendants offered any evidence that Plaintiff intentionally omitted Defendants Leshner and Hayes from the Original Complaint to gain some type of tactical advantage or that they would be prejudiced by the delay in adding them to the action. Instead, Defendants argue that the claims against Defendants Leshner and Hayes do not relate back to the Original Complaint because Plaintiff seeks to add rather than to change a party and because Defendants Leshner and Hayes were added to the Amended Complaint more than 90 days after the filing of the Original Complaint. Mot. at 17.

But the requirements Defendants cite apply only to relation back pursuant to Federal Rule of Civil Procedure 15(c)(1)(C), not relation back pursuant to Rule 15(c)(1)(A), which applies the law of the applicable statute of limitations as a separate and independent grounds for relation back. New York law allows relation back where a plaintiff seeks to add rather than change a party, *see, e.g.*, *Nemeth*, 224 N.E.3d at 521 (addition of mistakenly omitted party related back to filing of original complaint), and does not incorporate the Rule 4(m) 90-day deadline set forth in Federal Rule 15(c)(1)(C). Defendants further argue that relation back does not apply because there was no mistake regarding Defendants Leshner's and Hayes's identities. Mot. at 18. But under New York law, "the relation back doctrine is not limited to cases where the amending party's omission results from doubts regarding the omitted party's identity or status."[6] *Nemeth*, 224 N.E.3d at 518.

Because Defendants Leshner and Hayes are united in interest with Defendant Compound Labs, they are charged with notice of Plaintiff's institution of the action, and the claims against them therefore relate back to the timely filing of the Original Complaint.

---

[6] The cases Defendants cite to the contrary were both decided before the New York Court of Appeals issued its *Nemeth* decision clarifying New York law on this issue. *See Nemeth*, 224 N.E.3d at 518-19.

## II.    Plaintiff Adequately Pleaded His Negligence-Based Claims

### A.    New Jersey Law Applies to Plaintiff's Negligence Claims

When conducting a choice-of-law analysis, the court should look to the forum state's choice-of-law rules – in this case, New York's – to determine which state's law applies.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Under New York law, there is a two step-process for evaluating choice of law.  First, the court determines whether there is an actual conflict between the laws of two or more jurisdictions that may purportedly apply.  *See Hosking v. TPG Cap. Mgmt., L.P. (In re Hellas Telecomms. (Lux.) II SCA)*, 535 B.R. 543, 573 (Bankr. S.D.N.Y. 2015).  Then, if an actual conflict exists, New York courts consider whether the claim at issue sounds in contract or in tort. *See GlobalNet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 383 (2d Cir. 2006).

For tort claims, like Plaintiff's negligence, negligent misrepresentation, and professional malpractice claims, New York law relies on an interest-analysis test "where 'the law of the jurisdiction with the most significant interest in, or relationship to, the dispute' is applied." *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 399 (S.D.N.Y. 2010) (quoting *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997)).  Under the interest analysis test, courts consider the location of the tort—i.e. the place the Plaintiff suffered harm—as the jurisdiction with the most significant interest in or relationship to the dispute.  *Hosking*, 535 B.R. at 573.  Tort claims are generally "deemed to accrue at the time and place of the injury," and "[i]n cases involving economic harm, that place is normally the state of plaintiff's residence."  *2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assurance Co.*, 96 F. Supp. 3d 182, 201 (S.D.N.Y. 2015) (quoting *Deutsche Zentral-Genossenchaftsbank A.G.*, No. 12 Civ. 4025(AT), 2013 WL 6667601, at *5 (S.D.N.Y. Dec. 17, 2013); *see also Glob. Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 485 (N.Y. 1999) ("When an alleged injury is purely economic, the place of injury

usually is where the plaintiff resides and sustains the economic impact of the loss.").

In the present case, an actual conflict exists between New Jersey and Delaware law (the state's law upon which Defendants rely in their Motion) with respect to Plaintiff's negligence-based claims. Given the presence of a conflict, the interest analysis applies to determine what state's law governs Plaintiff's tort claims. Here, New Jersey—where both Celsius Network LLC and Celsius KeyFi, LLC resided at all relevant times—is indisputably the place where the relevant torts occurred and where Celsius suffered injury because it is where Celsius sustained the economic impact of the November 2020 Liquidation Event. *See Glob. Fin. Corp.*, 715 N.E.2d at 485 ("When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss."). New Jersey is also the principal place of business for both Celsius Network LLC and Celsius KeyFi, LLC. Moreover, Defendants make no argument that any conduct or alleged injury related to the November 2020 Liquidation Event occurred in Delaware and has alleged no connection between Delaware and the Liquidation Event. Accordingly, New Jersey law applies to Plaintiff's negligence, negligent misrepresentation, and professional malpractice claims.

### B. The Economic Loss Doctrine Does Not Bar Plaintiff's Negligence Claims

Defendants argue that the economic loss doctrine bars Plaintiff's negligence-based claims. But Defendants' arguments ignore New Jersey's particular foreseeability/special relationship exceptions to the economic loss doctrine, which apply to Plaintiff's claims.[7]

First, the economic loss doctrine does not apply to Plaintiff's negligence claims because

---

[7] The economic loss doctrine similarly does not apply because Plaintiff has not alleged Celsius and Defendants are in privity. The economic loss doctrine applies to the recovery in tort of economic losses arising out of a breach of contract. *Dean v. Barrett Homes, Inc*., 8 A.3d 766, 771-72 (N.J. 2010). Thus, "the absence of a contract between a plaintiff and defendant in a negligence suit precludes the application of the economic loss doctrine." *SRC Constr. Corp. v. Atl. City Hous. Auth*., 935 F. Supp. 2d 796, 799 (D.N.J. 2013).

Plaintiffs were particularly foreseeable victims of Defendants' negligent conduct for whom purely economic losses are recoverable in tort. Under New Jersey law, "a defendant who has breached his duty of care to avoid the risk of economic injury to particularly foreseeable plaintiffs may be held liable for actual economic losses that are proximately caused by its breach of duty." *People Express Airlines, Inc. v. Consol. Rail Corp.*, 495 A.2d 107, 118 (N.J. 1985) (declining to apply economic loss doctrine to purely economic losses suffered by an airline company following a fire in the Port of Newark freight yard). Foreseeability for purposes of this exception considers whether defendants knew or should have foreseen that the particular plaintiff or an identifiable class of plaintiffs were at risk with respect to the defendant's conduct and that ascertainable economic damages could ensue. *Id.* at 262-63.

Celsius easily satisfies New Jersey's particular foreseeability standard with respect to the negligence-based claims it has alleged. As an investor in the Compound protocol, Celsius was a member of an identifiable and discrete class of particularly foreseeable plaintiffs likely to suffer economic harm as a result of Defendants' negligent conduct. *See, e.g.*, *id.* at 264 (citing *Strauss v. Belle Realty Co.*, 482 N.E.2d 34 (N.Y. 1985) (involving tenants of a building harmed by a utility blackout as an example of an identifiable class of plaintiffs)). The economic losses Celsius suffered as a result of that conduct were likewise particularly foreseeable. Indeed, inappropriate liquidation of Celsius' positions was exactly the type of harm that would foreseeably result from tying the Compound protocol pricing oracle to a single input and thereby making it uniquely vulnerable to exploitation by hackers and other bad actors. *See, e.g.*, *Fabian v. LeMahieu*, Case No. 19-cv-00054-YGR, 2019 U.S. Dist. LEXIS 172906, at *33-34 (N.D. Cal. Oct. 4, 2019) (finding it was foreseeable that a lack of security on a crypto exchange would cause harm to individuals like plaintiff who deposited their cryptocurrency on defendant's exchange and that any

security failure on that exchange would result in harm to plaintiff and others similarly situated).

For these same reasons, Celsius was in a special relationship with Defendants such that Defendants may be held accountable for Plaintiff's purely economic losses. *See, e.g.*, *Sarcuni*, 664 F. Supp. 3d at 1112-13, 1115 (finding that a decentralized protocol was in a special relationship with the plaintiffs, and thus the economic loss doctrine did not apply, when the plaintiffs who were users of the protocol were the intended beneficiaries of the transactions at issue, it was foreseeable the protocol's lack of security would cause harm to their uses, there was a close connection between the negligent conduct and plaintiffs' injury, and there was public policy interest in preventing harm stemming from the protocol's lack of security oversight).

## C.    Plaintiff Has Adequately Alleged Defendants Owed Celsius a Duty of Care

Determining the existence of a duty of care involves weighing several factors, including the relationship of the parties, nature of the risk, foreseeability, opportunity and ability to exercise care, and public interest in the proposed solution. *Dunphy v. Gregor*, 642 A.2d 372, 376-77 (N.J. 1994); *Sanchez v. Indep. Bus Co.*, 817 A.2d 318, 321 (N.J. Super. Ct. App. Div. 2003). Reasonableness, public policy, fairness and common sense also must be considered when imposing legal duties. *See Dunphy*, 642 A.2d at 376-77. "Ultimately, whether a duty exists is a matter of fairness," and New Jersey courts "have recognized, in numerous settings, that traditional principles of tort liability can be adapted to address areas in which recognition of a cause of action and the imposition of a duty of care are both novel and controversial." *Id.* "The negligence tort has always been open to reinterpretation in light of particular situations; it is a law school commonplace negligence has been steadily expanded to take in new classes of foreseeable victims." *Bayer Healthcare Pharms. Inc. v. RJ Health Sys. Int'l LLC*, Civ. No. 15-6952 (KM) (MAH), 2017 U.S. Dist. LEXIS 8060, at *9-10 (D.N.J. Jan. 20, 2017).

Each of the factors courts consider weighs in favor of finding a duty here. With respect to

the relationship of the parties and foreseeability, as set forth in detail above, as an investor in the Compound protocol, Celsius was a member of an identifiable and discrete class of particularly foreseeable plaintiffs who stood in a special relationship with Defendants, suffered economic losses that were an eminently foreseeable result of Defendants' negligence, and for which New Jersey courts recognize a duty of care. *See, e.g.*, *People Express Airlines, Inc.*, 495 A.2d at 116 ("We hold therefore that a defendant owes a duty of care to take reasonable measures to avoid risk of causing economic damages, aside from physical injury to particular plaintiffs or plaintiffs comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct."); *Sarcuni*, 664 F. Supp. 3d at 1113 (finding duty to exercise reasonable care with respect to the management of a decentralized protocol).

Defendants argue that they were merely creators of software and therefore did not have a special relationship with Celsius and other Compound users. But that is contrary to the well-pleaded allegations in the Amended Complaint, which allege Defendants maintained control and oversight of the platform, *see, e.g.*, AC ¶¶ 42, 47, 49-52, as well as the case law involving decentralized finance platforms, *see, e.g.*, *Sarcuni*, 664 F. Supp. 3d at 1112-13 (special relationship existed between users of protocol and DAO partnership and its general partner founders); *cf. also Samuels v. Dao*, 2024 Case No. 23-cv-06492-VC, 2024 WL 4815022, *5 (N.D. Cal. Nov. 18, 2024) (rejecting argument Lido protocol was just an autonomous software not capable of being sued because it contradicted the well-pleaded allegations in the complaint and because plaintiffs were not suing the protocol but rather suing the entities that operated the protocol, including the DAO and its general partners); *CFTC v. Ooki DAO*, Case No. 3:22-cv-05416-WHO, 2022 WL 17822445, at *84 (N.D. Cal. Dec. 20, 2022) (DOA is an entity that can be sued, not merely a technology).

The risk of cybersecurity exploits made possible by Defendants' negligent design,

operation, and maintenance of the protocol are the type of risks for which courts regularly impose a duty. *See, e.g.*, *Sarcuni*, 664 F. Supp. 3d at 1113; *Fabian*, 2019 WL 4918431 at \*12 (defendants had a duty to exercise reasonable care with respect to their management of cryptocurrency platform); *cf. also In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 469 (S.D.N.Y. 2022) ("duty of care existed when the custodian was 'in the best position to protect information,' . . . 'understood the importance of data security to its business, knew it was the target of cyber-attacks, and touted its data security to current and potential customers") (citation omitted); *In re Blackbaud, Inc. Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 682 (D.S.C. 2021) (finding a duty where defendant knew of the risk of cyberattacks and the inadequacy of its systems yet "failed to correct, update, or upgrade its security protections").

Defendants additionally had the opportunity and ability to exercise care and prevent losses Celsius suffered. Defendants argue they could not have prevented the harm Celsius suffered because they did not control the platform at the time of the November 2020 Liquidation Event. But the well-pleaded allegations in the Amended Complaint – accepted as true as they must be at this stage of the proceedings – provide that Defendants maintained control and oversight at all relevant times. *See, e.g.*, AC ¶¶ 42, 47, 49-52. Defendants' purported rebuttal of these allegations with their own interpretation of the events drawn from "facts" alleged only in Defendants' self-serving Motion is insufficient to overcome Plaintiff's well-pleaded Complaint. *See, e.g.*, *O'Connor v. DL-DW Holdings, L.L.C. (In re Extended Stay, Inc.)*, Case No. 09-13764-JLG, 2020 WL 10762310, at \*91 (Bankr. S.D.N.Y. Aug. 8, 2020) (quoting *Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 429 B.R. 73, 91 (Bankr. S.D.N.Y. 2010)) ("For pleading purposes, a defendant's rebuttal of a plaintiff's contentions with its own does not entitle the defendant to dismissal of an action. . . . The relative strength of the parties' explanations is not a question to be

decided at the pleading stage unless the plaintiff's version is so remote as to be implausible."); *see also Sahoury v. Meredith Corp.*, Civ. Action No. 11-5189 (KSH), 2012 U.S. Dist. LEXIS 108122, *21 (D.N.J. Aug. 2, 2012) ("fact-specific weighing of numerous factors" necessary to determine the existence of a duty "awaits discovery" because "a plaintiff is not required to establish the elements of a *prima facie* case" on a motion to dismiss, but rather "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element").

Finally, finding a duty of care here furthers the strong public policy in favor of preventing future harm stemming from negligent design and oversight of DeFi and other cryptocurrency protocols and platforms. *See, e.g.*, *Sarcuni*, 644 F. Supp. 3d at 1113.

### D.     Plaintiff Has Adequately Alleged Breach

As to breach, Defendants' only arguments are fact disputes not appropriate for resolution at the motion to dismiss stage.

Whether a duty was breached is typically a fact issue subject to discovery and peculiarly within the province of the ultimate factfinder. *See, e.g.*, *Popper v. Indian Spring Golf Ass'n*, Case No. A-2489-22,2024 N.J. Super. Unpub. LEXIS 363, *11 (N.J. Super. Ct. Mar. 7, 2024) ("whether the duty was breached is a question of fact"); *Anderson v. Sammy Redd & Assocs.*, 650 A.2d 376 (App. Div. 1994) ("Questions of the breach of the duty, foreseeability, and proximate cause" are "peculiarly within the competence of a jury."). As set forth in greater detail in the Amended Complaint, Plaintiff alleges Defendants breached the duties they owed to Celsius as an investor in Compound to prevent foreseeable harm through their negligent design, operation, and maintenance of the Compound protocol, including exposing its users to exploit by relying on only one source of pricing data. *See, e.g.*, AC ¶¶ 5, 39, 54, 58-61, 64, 88-92. Those well-pleaded allegations – accepted as true at the motion to dismiss stage – adequately allege breach.

Defendants contend they did not breach any duty owed to Celsius because Celsius has not

offered sufficient evidence Defendants personally caused the protocol to be linked to only one pricing feed or that it was unreasonable to rely on only one feed and because Celsius should have done more diligence to learn that the Whitepaper was false prior to investing. Mot. at 22-23. But these assertions serve only to raise disputed issues of fact tied to alleged "facts" outside the pleadings not yet tested through discovery. They are therefore inappropriate for consideration at the motion to dismiss stage and cannot displace Plaintiff's well-pleaded allegations of breach.

### E. Defendants' Other Arguments Regarding Plaintiff's Negligence Claims Fail

#### 1. Expert Testimony Is Not Required to Plead Plaintiff's Professional Negligence Claim

Defendants additionally argue that Plaintiff has not stated a professional malpractice claim because Plaintiff has not established the standard of care for professionals in the financial technology industry through expert testimony. But Plaintiff need not establish the duty of care through expert testimony when a juror's "common knowledge as a lay person is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of specialized knowledge of experts." *Ly v. Lesenskyj*, No. CV172203ZNQTJB, 2023 WL 2579889, at *4 (D.N.J. Mar. 16, 2023) (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 579 (3d Cir. 2003)), and no specialized knowledge is required here to enable a lay person to determine Defendants were negligent in pegging cryptocurrency value to a single source.

#### 2. Plaintiff Has Adequately Alleged a Claim for Negligent Misrepresentation

With respect to negligent misrepresentation, Defendants argue Plaintiff has not adequately alleged Defendants owed them a duty. But as with negligence, "the guiding principle for the imposition of liability" in a negligent misrepresentation claim is the consideration of 'fairness and foreseeability.'" *Highlands Ins. Co. v. Hobbs Grp., LLC.*, 373 F.3d 347, 352 (3d Cir. 2004). For

the reasons set forth in detail above, those factors weigh in support of imposing a duty here.[8]  *See supra* Section II.C.  In addition, New Jersey imposes a duty of care on any party that "supplies false information for the guidance of others in their business transactions."[9]  *CW Int'l Sales LLC v. Glob. Source, Ltd.*, Civ. Action No. 22-06120 (RK) (RLS), 2024 U.S. Dist. LEXIS 63660, at *8 (D.N.J. Apr. 8, 2024) (citing Restatement (Second) of Torts § 552).  And here, the Amended Complaint alleges Defendants knew or had reason to know that the Price Feeds statement was false but nevertheless supplied the Whitepaper for guidance of potential investors.  As a result, Defendants' knowledge of the false statements in the Whitepaper gave "rise to a duty of care with regard to communicating that misrepresentation" to Celsius who, as a Compound investor, was "a reasonably foreseeable recipient of misinformation who relied on the information."  *Id.* at *10.

Finally, Defendants argue Plaintiff has not adequately alleged the Price Feeds Statement was false at the time it was made, that the Defendants had a duty to update it, and that it was justifiable for Celsius to rely on it.  Mot. at 25.  But the well-pleaded allegations in the Amended Complaint do just that.  *See, e.g.*, AC ¶¶ 3-4, 32-33, 40-41, 58, 70-75, 90-99, 101.  And, in any event, these are fact issues inappropriate for determination at the motion to dismiss stage.

## III.    Plaintiff Adequately Pleaded a Rule 10b-5 Violation

### A.    The COMP and cETH Tokens Are Securities

Plaintiff has adequately alleged that Compound tokens, including both cETH and COMP, are securities.  AC ¶ 55.  As set forth in greater detail below, COMP and cETH fit the classic

---

[8] Defendants' argument that Plaintiff has not established Celsius had a fiduciary or special relationship with Defendants sufficient to state a claim for negligent misrepresentation is misplaced, as New Jersey does not require a "specialized relationship" to state a claim for negligent misrepresentation.  *CW Int'l Sales LLC*, 2024 U.S. Dist. LEXIS 63660, t a*10 n.6.  In any event, Plaintiff has adequately alleged such a relationship.  *See supra* Sections II.B., II.C.

[9] A duty of care may also be imposed under New Jersey law were the defendant encouraged the plaintiff to "repose special trust or confidence in its advice," similar to Defendants' overtures regarding the reliability and safety of Compound as opposed to centralized exchanges.  *Colucci v. Bank of Am., N.A.*, No. CV 10-1000 (WHW), 2011 WL 13364575, at *4 (D.N.J. Mar. 28, 2011).

definition of an investment contract under the *Howey* test—investments of money in a common enterprise with profits to come from the efforts of others.[10]  *SEC v. Coinbase, Inc*., 726 F. Supp. 3d 260, 279 (S.D.N.Y., 2024) ("*Coinbase I*").  Indeed, not only has Compound declined to even challenge that its tokens are, in fact, securities in another pending securities action (Pls.' Resp. to Defs.' Mot. to Dismiss, *Houghton v. Compound DAO*, No. 22-cv-7781-WHO (N.D. Cal. June 22, 2023), ECF No. 82), but courts in this district have repeatedly upheld securities claims predicated on blockchain assets falling within the *Howey* definition of an "investment contract."  *See, e.g.*, *Coinbase I*, 726 F. Supp. 3d at 287–88; *United States v. Zaslavskiy*, No. 17 CR 647 (RJD), 2018 WL 4346339, at *1 (E.D.N.Y. 2018) (securities fraud suit regarding crypto-asset investment schemes and Initial Coin Offerings); *Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340 (S.D.N.Y. 2019) (class action involving digital token offerings); *SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 177 (S.D.N.Y 2020) (enforcement action regarding the sale of crypto-assets); *SEC v. Telegram Grp. Inc*., 448 F. Supp. 3d 352, 369 (S.D.N.Y. 2020) (enforcement action against corporation issuing cryptocurrency); *Williams v. Binance*, 96 F.4th 129, 132-33 (2d Cir. 2024) (class action seeking recission of transactions in crypto-assets facilitated through Binance); *SEC v. Terraform Labs PTE. Ltd.*, 684 F. Supp. 3d 170, 198 (S.D.N.Y. 2023) (securities action for sale of unregistered securities against crypto asset company and its founder).  As in those cases, Celsius invested money in the Compound enterprise with the reasonable expectation of profits to come from the efforts of others.  The tokens it purchased to do so are investment contracts under *Howey*.

---

[10] cTokens like cETH are also securities because they qualify as notes within the meaning of the Securities Exchange Act.  Compound users who invest assets on the platform to be used and borrowed by other users receive cTokens like cETH to denote their rights to redeem the assets they invested and to earn interest and rewards in exchange for their investment.  AC ¶¶ 29-30.  When investors redeem their cTokens, they are expected to receive more of the underlying asset than their initial deposit, and cTokens may be traded freely on the secondary market.  *Id.* ¶ 31.  As such, cTokens are notes and therefore securities within the standard set forth in *Reves v. Ernst & Young*, 494 US 56, 63-64 (1990).

### 1. Investments of Money

As an initial matter, cETH and COMP reflect investments of money. As alleged in the Amended Complaint, Celsius purchased cETH and COMP through its investment of Ethereum on the Compound protocol. AC ¶¶ 30, 31, 46, 55-56, 87. The cases Defendants cite regarding "free giveaways" that do not involve a "risk of loss" are inapposite. Mot. at 36-37. As Defendants well know, there are two ways to invest in Compound – depositing money into a liquidity pool and borrowing against those deposits and receiving cTokens and COMP tokens in return or purchasing cTokens and COMP tokens on the secondary markets. AC ¶¶ 30-31. Either method requires the investment of money and thus Plaintiff has adequately alleged an investment of money.

### 2. Common Enterprise

The Amended Complaint adequately alleges that through its investment in cETH and COMP tokens, Celsius was investing in a common enterprise, which Defendants' motion does not seriously contest. "A common enterprise exists whenever there is a horizontal commonality between purchasers and a given defendant. Such commonality, moreover, is established if each investor's fortunes are ti[ed]. . . to the fortunes of the other investors by the pooling of assets, and there is a pro-rata distribution of profits earned from these combined assets." *Terraform Labs.*, 684 F. Supp. 3d at 195 (cleaned up and internal quotation marks and citations omitted).

The allegations set forth in the Amended Complaint easily satisfy this standard. Plaintiff alleges that investors in Compound invest assets into community pools of assets from which they earn interests and rewards based on the borrowing and lending activity of other Compound users, including the spread between the borrowing and lending of various Compound users, which is collected by COMP token holders, with the owners collecting a protocol-defined commission on each outstanding loan. *See, e.g.*, AC ¶¶ 28-31, 46. This is sufficient to allege a common enterprise.

*See, e.g.*, *Terraform Labs.*, 684 F. Supp. 3d at 195-96 (common enterprise adequately alleged where assets were pooled and profits generated from pooled assets were expected to be re-distributed to those who deposited their coins into the Anchor Protocol and where assets were pooled, used to improve the protocol, and profits derived from the improved protocol were fed back to investors); *Balestra*, 380 F. Supp. 3d at 356 (common enterprise adequately alleged where investments were pooled and tokens issued and goal of issuance of tokens was to launch a new blockchain to facilitate "blazing fast" payments).

### 3. Reasonable Expectation of Profits

Finally, the Amended Complaint adequately alleges the Compound common enterprise provided the expectation of future profits through the efforts of the Defendants and other third parties. *Howey*'s requirement as to the expectation of profits is satisfied if an objective investor would have expected a promise of returns. This is a "flexible" standard "rather than a static principle," and "the Supreme Court has made it clear that. . .'form should be disregarded for substance and the emphasis should be on [the] economic reality of the parties' arrangement.'" *Coinbase I*, 726 F. Supp. 3d at 287. As set forth above, Plaintiff alleges in the Amended Complaint that investors in Compound invested assets into community pools from which they expected to earn interest and rewards based on the borrowing and lending activity of other Compound users and COMP token holders like Defendants, including the spread between the borrowing and lending of various Compound users, which is collected by COMP token holders, with the owners collecting a protocol-defined commission on each outstanding loan. *See, e.g.*, AC ¶¶ 28-31, 46. Indeed, COMP tokens are traded on the secondary market. If there was no expectation of profits, a secondary market for COMP tokens would not exist.

Defendants argue that the possibility of future profits Celsius anticipated through its

investment in Compound was based only on its own actions, that Celsius had no expectation that Defendants or other COMP holders would engage in efforts to generate profit for the Compound community, and that COMP was marked only as a "governance token" and not an investment. Mot. at 37. But Defendants are wrong on all fronts, which at best raise fact issues that are not appropriate for determination at the motion to dismiss stage in any event.

As an initial matter, the allegations in the Amended Complaint directly contradict Defendants' argument that any profits Celsius expected to derive were solely from its own actions. The Amended Complaint alleges that the interest and rewards earned on cTokens and COMP tokens were based on the investing and borrowing activities of other Compound users and the overall performance of the Compound DAO. *See, e.g.*, AC ¶¶ 28-31, 46. Moreover, Plaintiff specifically alleges that COMP tokens are tradeable on secondary markets, so Celsius could reasonably expect to profit from its investments based on the increased value of its tokens through the efforts Defendants' repeatedly touted to make Compound a "financial infrastructure that applications and developers can rely on, forever" and an "unstoppable, upgradable financial infrastructure."[11] *See, e.g.*, *id.* at ¶¶ 45, 48; *see also*, *Balestra*, 380 F. Supp. 3d at 354 (rejecting argument that purchasers of ATB coin gained no share in a common enterprise, but rather exercised individual control over the ATB Coin asset because defendants encouraged investors to purchase ATB Coins based at least in part on the claim that the speed and efficiency of the ATB Blockchain would result in an increase in the coins' value). Nor is it required that Celsius anticipate profit *solely* "from the efforts of the promoter or a third party." *Kik Interactive Inc.*, 492 F. Supp. 3d at 179. "[T]he Second Circuit has held that the word 'solely' should not be construed as a literal

---

[11] "Profits can mean a share of the earnings realized from the use of the investors' funds, or 'capital appreciation resulting from the development of the initial investment.'" *SEC v. Binance Holdings Ltd.*, 738 F. Supp. 3d 20, 47 (D.D.C. 2024) (quoting *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 852 (1975)).

limitation; rather, [courts] 'consider whether, under all the circumstances, the scheme was being promoted primarily as an investment or as a means whereby participants could pool their own activities, their money and the promoter's contribution in a meaningful way." *Id.* (cleaned up).

With respect to Defendants' argument that COMP is merely a "governance token," the Amended Complaint says otherwise, specifically alleging that in addition to governance rights, COMP tokens are a claim on the Compound DAO's future earnings and that COMP holders collected the spread between the borrowing and lending percentage rates of various Compound users, which could then be distributed to COMP token holders like a typical shareholder dividend. AC ¶¶ 31, 46; *see also id.* ¶ 45 (alleging Defendant Leshner stated that purchasing COMP did not require participating in community governance).

As such, Plaintiff has adequately alleged a reasonable expectation of profits and that cETH and COMP tokens are investment contracts under the terms of the *Howey* test.

**B.      Celsius Has Standing as a Beneficial Owner of cETH and COMP**

As Plaintiff clearly alleges in the Amended Complaint, Celsius was a purchaser or seller of cETH and COMP; Plaintiff's standing is without real challenge.  AC ¶¶ 30, 31, 55, 88.  Standing under Rule 10b-5 requires the plaintiff to be a purchaser or seller of securities, as "opposed to a holder, *i.e.*, someone who decided not to purchase or sell stock as a result of the misrepresentation." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F Supp 3d 164, 196-97 (S.D.N.Y 2022) (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749 (1975)).  Accordingly, standing extends to "the class of plaintiffs. . .who have at least dealt in the security to which the prospectus, representation, or omission relates."  *Blue Chip Stamps,* 421 U.S. at 747.  It is axiomatic that there are two ways one could become a holder of Compound securities—by purchasing cTokens and COMP through the investment of assets on the Compound platform, or by purchasing tokens on

the secondary market. *See supra* Section III.A. Plaintiff has alleged that Celsius made investments on Compound and received cETH and COMP in exchange, establishing its *prima facie* status as a purchaser. AC ¶¶ 55-56.

The case law Defendants cite to argue that Plaintiff is not a proper purchaser under Rule 10b-5 is not on point. *See* Mot. at 26. Unlike here, the plaintiff in *Menora Mivtachim Insur. Ltd.* attempted to bring a claim after a company whose stock the plaintiffs did not purchase made material misstatements about itself that negatively impacted another company's stock, which plaintiffs did purchase. 54 F.4th 82, 87-89 (2d Cir. 2022). Here, Plaintiff alleges Celsius was a purchaser or seller of *Compound* securities, about which Defendants made false statements or omissions. Likewise, Defendants suggest that because the Whitepaper *predates* COMP, no one should have standing to challenge it. Mot. at 26. But this argument relies on the false premise that no offeror of securities should be subject to liability for its false statements or omissions related to a subsequent offering *based on* those statements, and courts have not hesitated to acknowledge that Whitepapers are the typical tool for marketing crypto securities. *See Williams v. Binance*, 96 F.4th at 134 (noting that initial coin offerings, for securities offering purposes, are typically accompanied by a "whitepaper" which includes "both advertising and a technical blueprint for the proposed project associated with the token"). The Amended Complaint clearly alleges Celsius was a purchaser or seller of securities as to allow standing for its Rule 10b-5 claim. AC ¶¶ 30-31, 55-56, 87-88. But even where pleadings are unclear as to purchaser or seller status, Rule 12(b)(6) obligates the Court to draw all reasonable inferences in Plaintiff's' favor, and discovery should be permitted to bear out Plaintiff's claims. *See In re Turquoise Hill*, 625 F. Supp. 3d at 194 (ultimate question in a motion to dismiss is whether the allegations call for enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the claim); *see also Caiola v. Citibank,*

*N.A., N.Y.*, 295 F.3d 312, 323 (2d Cir. 2002).

### C. The Whitepaper Forms the Basis of a Material Misstatement or Omission

As an initial matter, Plaintiff has adequately alleged that the Price Feeds statement was false at the time it was made. AC ¶ 92. Relying on a myriad of alleged "facts" not set forth in the Amended Complaint, Defendants attempt to convince the Court to discard Plaintiff's well-pleaded allegation. *See* Mot. at 27. But accepting the allegations in the Amended Complaint as true – which the Court must – Plaintiff has met its pleading requirements. *Simon v. KeySpan Corp.*, 694 F.3d 196, 198 (2d Cir. 2012) (noting that the explanation for alleged fraudulent activity by defendant was entitled to little weight when we must "accept all factual claims in the complaint as true and draw all reasonable inferences in the plaintiff's favor").

In addition, Plaintiff alleges precisely the alternatives permitted by Rule 10b-5—the Price Feeds statement was a materially misleading and was false at all times, or the Price Feeds statement became false at a later time, but Defendants continued to make this statement by virtue of its continued publication (AC ¶¶ 92-94), without sufficient forward looking or cautionary language, and Defendants failed to correct this misrepresentation by way of material omission. *See Terraform Labs*, 684 F. Supp. 3d at 200.

Once the issuer of a security speaks on a topic, even if no prior independent duty exists, a duty arises to tell the entire truth. *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014); s*ee also Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 179-80 (S.D.N.Y. 2010). Literal accuracy is not enough, as the issuer "must as well desist from misleading investors by saying one thing and holding back another." *In re Turquoise Hill*, 625 F. Supp 3d  at 195 (citation omitted); *see also In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010) (when one "makes a disclosure about a particular topic, whether voluntary or required, the representation must be complete and accurate").

By speaking on such an important internal controls topic here—how many pricing inputs would be averaged to compile a Pricing Feed—the only protection against automatic liquidation—Defendants had a duty to speak truthfully and make additional corrective disclosures as necessary to avoid misleading investors. *Freudenberg*, 712 F. Supp. 2d at 179 ("[O]nce corporate officers undertake to make statements, they are obligated to speak truthfully and to make such additional disclosures as are necessary to avoid rendering the statements made misleading."). Defendants failed to do so, and Defendants point to no sufficient cautionary language in the Whitepaper to excuse their omission. *See Merkamerica Inc. v. Glover*, Case No. CV 19-6111 PSG (GJSx), 2019 WL 8989833, at *8 (C.D. Cal. Dec. 3, 2019). Defendants do not contest that the Whitepaper continues to be published on Compound's website to present day. Defendants even admit that investors were told the Protocol was "based on" the Whitepaper. Mot. at 28. Because Plaintiff alleges both that the Whitepaper stated the Price Feed was linked to ten inputs and Defendants knew—and now admit they knew—the Price Feed was tied to just one input prior to the 2020 Liquidation Event, (AC ¶¶ 40, 41, 95, 101), Plaintiff has adequately alleged Defendants had a duty under Second Circuit law to make a corrective disclosure that Defendants did not fulfill. *See Terraform Labs*, 684 F. Supp. 3d at 200; *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 268, 268-69 (2d Cir. 1993); *In re Barclays PLC Sec. Litig.*, No. 22 Civ. 8172 (KPF), 2024 WL 757385, at *13 (S.D.N.Y. Feb. 23, 2024) (omission actionable when "silence would make other statements misleading or false"). Pointing to a proposal not alleged in the Amended Complaint and not yet subject to discovery on a separate part of the website with dozens of other proposals is no adequate disclosure.[12] The Whitepaper's continued publication, even alongside the supposed proposals

---

[12] Defendants cite to multiple sources outside the Complaint, which is improper at the motion to dismiss stage. Mot. at 5-12. Indeed, even Proposal 19 that Defendants argue insulates them is not the disclosure they suggest. Instead, rather than clearly disclosing that the "oracle" would be tied solely to pricing data from Coinbase Pro (AC ¶40), Proposal 19 actually states, "The Compound Protocol will ***initially*** use price data from Coinbase (via the Coinbase

cited by Defendants, misled investors who had no effective way to determine that it was not, or no

longer, accurate. *See Barclays*, 2024 WL 757385, at * 13 (dueling assertions cannot both be true;

therefore, the misstatements, taken together, would have misled a reasonable investor).

In the blockchain sphere, courts do not hesitate to look to a protocol's whitepaper to

determine what statements are binding on the company. *See Merkamerica Inc*, 2019 WL 8989833,

at *6-8 (holding whitepaper by cryptocurrency company was actionable statement for Rule 10b-5

purposes, even where defendants argued same was forward-looking or aspirational); *Williams v.

Binance*, 96 F.4th at 134 (noting whitepapers to be common statements by blockchain company).

Rule 10b-5 permits a claim where a party makes an untrue statement of a material fact or omits to

state a material fact necessary in order to make the statements made, in the light of the

circumstances under which they were made, not misleading. 17 C.F.R. § 240.10b-5(b) (emphasis

added). Indeed, a district court recently found similar statements relating to the risk of loss to

crypto customers' assets to be material and actionable where the Defendants failed to disclose that

customers were at risk of losing their assets. *In re Coinbase Glob., Inc. Sec. Litig.*, Case No. 2:22-

cv-04915 (BRM) (LDW), 2024 WL 4053009, at *10 (D.N.J. Sept. 5, 2024 ("*Coinbase II*") The

Coinbase II court also held that Defendants had a duty to disclose the risk to the customers' assets,

where platform disclosures detailed certain other risks, as this placed "the safety of customers'

assets 'in play,'" and Coinbase was "bound to speak truthfully and disclose the risks." *Id.*

Similarly, the 2019 Whitepaper provided that the Pricing Feed would relate to ten pricing sources.

AC ¶ 41. The inclusion of a specific number of pricing inputs put the number of inputs at play,

---

Oracle) ***as well as a time-weighted average price from Uniswap's on-chain markets to ensure price integrity***."
Proposal 019: Open Price Feed, Compound Finance (executed Aug. 17, 2020),
https://compound.finance/governance/proposals/19 (emphasis added). This Proposal, in and of itself, is misleading,
as the 2020 Liquidation Event would not have occurred if Defendants had utilized the "weighted average price" in
addition to Coinbase Pro, as promised. Dismissal-prohibiting fact issues abound, such as what price data Defendants
utilized when, or whether Proposal 19 was false when made, and the participation in the execution of Proposal 19.

and Defendants were bound to speak truthfully in the form of a corrective disclosure regarding any change to this control and related risks. *See id.*

### D. Celsius Justifiably Relied on the Statements in the Whitepaper

To survive a motion to dismiss, a plaintiff need only plead that he relied on the defendant's misrepresentations. Plaintiff did so here. AC ¶ 96. Defendants assert that Plaintiff's allegation of reliance is not sufficient because it is made on information and belief. But that is not correct. Courts have repeatedly recognized that pleading standards should be relaxed where the Plaintiff is a trustee or similar estate administrator – like Plaintiff here – and where – as here – the Plaintiff is not asserting that the fraud was committed against him but against a third party. *See, e.g.*, *Allegaert v. Perot*, 78 F.R.D. 427, 430 (S.D.N.Y. 1978) (holding that specificity requirements of Rule 9(b) should be relaxed where the plaintiff is a trustee in bankruptcy in an action under Section 10(b) of the Exchange Act and Rule 10b-5). The Amended Complaint sets forth the facts with respect to Plaintiff's 10b-5 claim with sufficient particularity to apprise the Defendants of the charges against them and to prepare an adequate defense, and as such, Plaintiff's allegations of reliance satisfy the relaxed standard applicable here.

Defendants further argue that Celsius' reliance was not justifiable because Celsius is a sophisticated investor who should not have relied on the statements in the Whitepaper and should have done further diligence to determine those statements were false. Mot. at 31-33. But Defendants' argument relies on facts outside of the pleadings that have not been subjected to discovery (e.g. when the alleged changes to the protocol were implemented, how they were communicated to potential investors, etc.), and at best, the reasonableness of Celsius' reliance is an issue of fact not appropriate for determination through a motion to dismiss. *See, e.g.*, *Whitbread (US) Holdings, Inc. v. Baron Philippe de Rothschild, S.A.*, 630 F. Supp. 972, 978 (S.D.N.Y. 1986).

Moreover, Celsius' sophistication does not preclude a finding of justifiable reliance. *See Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 902 F. Supp. 2d 476, 496 (S.D.N.Y. 2012) ("even sophisticated plaintiffs are not required as a matter of law to 'conduct their own audit' or 'subject [their counterparties] to detailed questioning'"); *Patriot Expl., LLC v SandRidge Energy, Inc.*, 951 F. Supp. 2d 331, 356 (D. Conn 2013) ("Given the fact-sensitive nature of the inquiry regarding whether a sophisticated investor's reliance is justifiable, drawing inferences in the light most favorable to the plaintiffs, the allegations in the complaint support a conclusion that the plaintiffs' sophistication does not preclude justifiable reliance on the alleged misrepresentations.").

### E. Celsius Sufficiently Pleaded Facts Supporting an Inference of Scienter

While the Private Securities Litigation Reform Act of 1995 ("PSLRA") requires a plaintiff to plead "facts giving rise to a strong inference that the defendant acted with the required state of mind, the inquiry is whether *all* the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Emps.' Ret. Sys. of Gov't. of the Virgin Is. v Blanford*, 794 F.3d 297, 305 (2d Cir 2015). In the Second Circuit, this requirement is met where the complaint alleges facts showing either (1) a "motive and opportunity to commit the fraud"; or (2) circumstantial evidence of conscious misbehavior or recklessness. *Terraform Labs*, 684 F. Supp. 3d at 200-01. "Circumstantial evidence can support an inference of scienter in a variety of ways, including where defendants '(1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." *City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*, 587 F. Supp. 3d 56, 96 (S.D.N.Y. 2022). This standard does not involve the more probing test used at summary judgment because

a court is "unaided by discovery" at the motion to dismiss stage. *Blanford*, 794 F.3d at 306.

The Amended Complaint adequately alleges scienter. Plaintiff alleges that the Defendants had ultimately authority over the Price Feeds statement, including how it was communicated and distributed, and that the Defendants knew facts or had access to information indicating that the Price Feeds statement was false when made or that Defendants failed to correct information they had a duty to monitor. AC ¶¶ 42, 49-52, 89, 93; *see also Reckitt Benckiser Grp*, 587 F. Supp. 3d at 96-97. Such allegations have survived a motion to dismiss in multiple securities cases involving cryptocurrency.[13] *Yuille v. Uphold HQ Inc.*, 686 F Supp 3d 323, 353 (S.D.N.Y. 2023) (refusing to dismiss complaint for failure to allege reckless or intentional conduct after loss due to hacking); *Coinbase II*, 2024 WL 4053009, at *17 ("While these individual allegations may not give rise to an inference of scienter on their own, all of the facts alleged, taken collectively, give rise to a strong inference of scienter.").

Even to the extent Defendants were correct that the Price Feeds statement was true when made and that the platform later transitioned to a single-price-feed model – which is contrary to the well-pleaded allegations in the Amended Complaint – Defendants' own assertions establish that Defendants then knew the Price Feeds statement was false and intentionally or recklessly failed to correct this misstatement, presumably to avoid reduced investment activity on the platform (and corresponding reduced values of the cToken and COMP token securities) by investors unwilling to risk investing on a platform tied to a single price feed. Defendants' failure to speak fully and truthfully about the change in pricing inputs, and resulting lack of controls, after boasting about the trust and security from hacking provided by Compound, was consciously

---

[13] The litany of facts cited outside the Amended Complaint are of no effect. *Simon*, 694 F.3d at198 (explanation for alleged fraudulent activity by defendant was entitled to little weight when we must "accept all factual claims in the complaint as true and draw all reasonable inferences in the plaintiff's favor").

reckless.  *See Yuille*, 686 F. Supp. 3d at 353 (plaintiffs adequately alleged reckless and intentional conduct where crypto defendants were aware of hacking risk but failed to protect wallet).  The Amended Complaint therefore adequately alleges scienter.

### F.   Plaintiff Adequately Alleged Loss Causation

Allegations of loss causation are not subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA.  *See ODS Cap. LLC v. JA Solar Holdings Co.*, No. 18-cv-12083 (ALC), 2022 WL 3655525, * 2 (S.D.N.Y. Aug. 25, 2022); *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 282 (S.D.N.Y. 2012); *Coinbase II*, 2024 WL 4053009, at *17.  Rather, all that is required to show loss causation is that plaintiffs provide some indication of the loss and connect it to the purported cause in a "short and plain" statement consistent with Rule 8(a)."  *ODS Cap.*, 2022 WL 3655525 at *2.  "Plaintiff's burden to plead loss causation is not a heavy one."  *Id.*  Therefore, the issue of loss causation should not be resolved on a motion to dismiss.  *See Gross v. GFI Grp., Inc.*, 162 F. Supp. 3d 263, 269 (S.D.N.Y. 2016).

Even if a motion to dismiss was the proper vehicle to evaluate loss causation, Plaintiff has sufficiently alleged that the misrepresentation or omission here caused Celsius' loss.  To plead loss causation under Section 10(b), "the plaintiff's complaint must plead that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement."  *Lea v. TAL Educ. Grp.*, 837 F. App'x 20, 27 (2d Cir. 2020).  As discussed in greater detail above with respect to the foreseeability of Celsius' injury, the Amended Complaint meets this standard.  Investors, including Celsius, were led to believe their assets were safer from wrongful liquidation on Compound than on a centralized exchange and that the protocol relied on ten pricing inputs.  AC ¶¶ 4, 27.  Because Compound actually only used one price input – a risk it failed to adequately disclose – Celsius' assets were wrongfully liquidated – the exact type of harm that would foreseeably result from tying the protocol to a single input and thereby making it uniquely

vulnerable to exploitation by hackers and other bad actors.[14]  AC ¶¶ 5, 54, 58; *see also Coinbase II*, 2024 WL 4053009, at *17 (plaintiffs plausibly alleged a causal link between concealment of asset safety risks and alleged losses).  Accordingly, Celsius has adequately alleged loss causation. *See City of Sterling*, 587 F. Supp. 3d at 101 (plaintiff alleged loss causation related to material omissions, and defendants' insertion of facts contrary to plaintiff's allegations "are better considered at a later stage of the litigation on a more complete fact record" and do "not go toward the plausibility of plaintiff's allegations at the Rule 12(b)(6) stage").

## IV.     Plaintiff Adequately Pleaded Breach of Fiduciary Duty

The Parties agree that California law applies to Plaintiff's breach of fiduciary duty claim.[15] *See* Mot. at 38.  Defendants contend that Plaintiff's claim for breach of fiduciary duty fails because Plaintiff has not adequately alleged the existence of a partnership or breach of duty by the Defendants.  Defendants are wrong on both accounts.

### A.      Plaintiff Has Adequately Alleged the Compound DAO Is a Partnership

*First*, Plaintiff has adequately alleged that the Compound DAO was a partnership for which the Defendants were general partners.  "'It is well-settled that the existence of a partnership is a question of fact."  *Sarcuni*, 664 F. Supp. 3d at 1115 (internal quotation omitted).  To plausibly allege the existence of a general partnership under California law, Plaintiff must allege (1) an association of two or more persons (2) carrying on as co-owners of (3) a business for profit.  *See* CAL. CORP. CODE § 16202(a) (West 2024); *see also Sarcuni*, 664 F. Supp. 3d at 1115.

---

[14] In any event, Defendants' argument that there is no connection between the Price Feed and the value of Compound tokens falls flat.  In fact, as the news of the 2020 Liquidation Event hit the market, the price of COMP dropped 13%. After closing at $123.15 on November 25, 2020, COMP opened at $123.13, but following the news of the 2020 Liquidation Event, fell to a low of $99.10, closing at $107.07.  *See* CoinMarketCap, Compound Price History, available at https://coinmarketcap.com/currencies/compound/historical-data/.

[15] New York applies a principal known as dépeçage pursuant to which the choice of law analysis is performed separately on a claim-by-claim basis such that a different state's law may apply to different claims asserted in the same complaint.  *2002 Lawrence*, 96 F. Supp. 3d at 200.  California law applies to Plaintiff's breach of fiduciary duty claim since the Compound DAO is a general partnership headquartered in California.  AC ¶ 13.

The Amended Complaint does just that. Plaintiff alleges the Compound DAO is an association of two or more members – the COMP token holders and investors – carrying on as co-owners of the Compound DAO and Protocol, that the Compound DAO is governed by the COMP token holders; that holders of COMP tokens contribute money or investments to the Protocol and have governance rights that allow them to suggest and vote on actions relevant to the DAO; that the Compound DAO and COMP holders generate profits in the form of the spread between borrowing and lending rates of transactions on the platform; and that COMP tokens entitle the holder to a share of the DAO's future earnings. AC ¶¶ 26, 31, 43-53, 98-99.

Indeed, multiple courts have held that allegations nearly identical to those in the Amended Complaint were sufficient to allege DAOs – like the Compound DAO – are partnerships under California law. *See, e.g.*, *Sarcuni*, 664 F. Supp. 3d at 1115-16 (plaintiffs adequately alleged bZx DAO was a partnership where it alleged DAO was an "association of two or more persons (the tokenholders and investors)"; the bZDAOx generates profits through its margin trading and lending products; the BZRX tokenholders possessed governance rights over the DAO; and BZRX tokenholders could share profits through distribution of treasury assets or via an interest-generating token); *Samuels*, 2024 WL 4815022, *6 (plaintiff adequately alleged Lido DAO was a partnership because "the complaint allege[d] that some number of people got together and agreed to create and operate an Ethereum staking service because they thought they could make money doing that").

Defendants' arguments to the contrary are unavailing. Defendants assert that Plaintiff has not sufficiently alleged "mutual consent" of the partners to form a partnership. Mot. at 38-39. But California law is clear that a partnership may be formed "whether or not the persons intend to form a partnership." CAL. CORP. CODE § 16202(a); *see also Jones v. Goodman*, 271 Cal. Rptr. 3d 487, 501 n.19 (Cal. Ct. App. 2020) ("Under the [California] Corporations Code, unless persons

associated to do business together establish a formal entity like a corporation, the association is deemed to be a partnership regardless of the parties' intent."); *In re Marriage of Geraci*, 51 Cal. Rptr. 3d 234, 245 (Cal. Ct. App. 2006) ("[P]ersons may unintentionally create a partnership where their actions and behavior demonstrate an intent to engage in business together."). Moreover, California law regarding a person's entry into a partnership with the consent of all partners is merely a default rule that can be displaced by an oral or implied partnership agreement, as alleged in the Amended Complaint here with respect to the ability of any holder of COMP's ability to participate in Compound DAO's governance. *See, e.g.*, *Samuels*, 2024 WL 4815022 at *7 (rejecting defendants' argument that Lido DAO was not a partnership because a person may become a partner only with the consent of all partners and explaining that because the Lido DAO is structured in such a way that anyone who holds LDO can participate in the DAO's governance, it is reasonable to infer that the DAO made an agreement to modify the default rules and allow people to become partners by purchasing LDO).

Defendants next claim Compound Labs is not a partner in the Compound DAO partnership since a supply schedule indicated Compound Labs would not hold COMP tokens at some point in time. The facts set forth in the Amended Complaint, however, allege that Compound Labs held an ownership interest in the DAO and participated in the management of the Compound Protocol, which is sufficient to support the reasonable inference that Compound Labs held COMP tokens. *See, e.g.*, *Sarcuni*, 664 F. Supp. 3d at 1118-19; *see also True Return Sys. LLC v. Compound Protocol*, No. 22-CV-8483 (JGLC), 2023 WL 6211815, at *2 (S.D.N.Y. Sept. 25, 2023) (stating Compound Labs shares a common objective with Compound DAO because it created the DAO, was its initial administrator, and continues to own an interest in it ***as a COMP token holder***).

Defendants argue that the Amended Complaint alleges Defendants Leshner and Hayes

came together to form Compound Labs, which is a corporation, and that this is somehow evidence that they did not intend the separate entity Compound DAO to operate as a partnership. Mot. at 39. But the fact that Defendants are co-owners of a corporation does not preclude them from also co-owning a separate partnership. "California law expressly provides that corporations and other corporate entities can be members of a general partnership." *Samuels*, 2024 WL 4815022, at *8 (citing CAL. CORP. CODE § 16101(a)(13)) (rejecting argument that Lido DAO was not a partnership and investor defendants were not general partners because the investors themselves chose other corporate forms). Defendants do not assert that the Compound DAO – which Defendants themselves maintain is a different entity than Defendant Compound Labs – affirmatively chose to form a corporation (or another different business form). Compound DAO represents the exact type of "default" entity that may be deemed a partnership because "the parties have neglected to avoid that implication by choosing a different business form." *In re Hart*, Lead Case No. 09-71053, 2014 WL 1018087, at *20 (Bankr. N.D. Cal. Mar. 14, 2014); *see also Sarcuni*, 664 F. Supp. 3d at 1117-18 (finding bZx DAO a partnership and noting that when control of the bZx Protocol was transitioned from bZerox LLC to bZx DAO, the partners elected to forego registering the DAO as an LLC or other legal entity with limited liability).

Defendants further contend that Plaintiff has not sufficiently alleged an agreement to share profits and losses because Plaintiff has not alleged that any profits were actually shared with COMP token holders. Mot. at 39. But under California law, "profit sharing is evidence of a partnership, rather than a required element of the definition of a partnership." *Samuels*, 2024 WL 4815022, at *8 (internal quotation marks and citation omitted) (finding Lido DAO was a partnership even though no profits had been distributed LDO tokenholders). California law requires only an association with the intent to carry on a business for profit, *see id.*, which the

Amended Complaint adequately alleges as set forth in greater detail above.

Finally, Defendants claim Plaintiff has not adequately alleged a right of joint control over the Compound DAO. Mot. at 39-40. However, the Amended Complaint alleges holders of COMP tokens possessed governance rights, which courts have held is sufficient to allege a partnership. *See, e.g.*, *Sarcuni*, 664 F. Supp. 3d at 1116 ("[L]imited governance rights don't divest a partnership of its essential nature — a partnership can still exist when individual partners only control a part of the enterprise."); *Samuels*, 2024 WL 4815022, at *9 (California law does not require that each partner have the power of ultimate control; all that is needed is joint participation in the management and control). Accordingly, Plaintiff has adequately alleged the Compound DAO is a partnership for which Defendants Leshner, Hayes, and Compound Labs were general partners.

## B. Plaintiff Has Adequately Alleged a Breach of Duty

In a one-sentence argument cross referencing their assertions with respect to Plaintiff's negligence claims, Defendants argue that Plaintiff has not adequately alleged any breach of duty. Mot. at 40. As explained in greater detail above and set forth in the Amended Complaint, Plaintiff has sufficiently alleged a breach of duty by Defendants. *See* Supra Section II.D.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion in its entirety. Should the Court be inclined to grant the Motion in whole or in part, Plaintiff respectfully request the opportunity to amend its complaint. Rule 15(a) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7015 of the Federal Rules of Bankruptcy Procedure, generally provides that leave to amend a pleading should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Plaintiff further requests that the Court grant such other and further relief as the Court deems just and proper.

Dated: January 31, 2025
　　　　New York, New York

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By:　*/s/ Mitchell P. Hurley*
　　　Mitchell P. Hurley
　　　Dean L. Chapman, Jr.
　　　One Bryant Park
　　　New York, New York 10036
　　　Telephone:  (212) 872-1000
　　　Facsimile:  (212) 872-1002

　　　Elizabeth D. Scott (admitted *pro hac vice*)
　　　Nicholas R. Lombardi (admitted *pro hac vice*)
　　　2300 N. Field Street, Suite 1800
　　　Dallas, Texas 75201
　　　Telephone:  (214) 969-2800
　　　Facsimile:  (214) 969-4343

　　　*Counsel for Plaintiff*